**In re the Marriage of Jane E. GOLDBERG, Respondent,**

v.

**Milton H. GOLDBERG, Appellant.**

No. 48135.

Missouri Court of Appeals, Eastern District, Division Two.

March 29, 1985.

Theodore S. Schecter, Frances Luehrman, Clayton, for appellant.

Carroll J. Donohue, St. Louis, for respondent.

PER CURIAM.

The trial court dissolved the 22 year marriage of the parties, made a determination of the status of the property of the parties, set apart their separate property, and divided the marital property. Neither party was awarded maintenance. The court granted joint custody of the two minor children of the marriage, ordered the husband to pay all expenses of schooling, camps, hospitalizations and prescribed medical and dental treatment for the children. The court made no award for support of the children. Husband's appeal with respect to the division of marital property is the subject of this opinion. Wife has also appealed attacking the award of joint custody. The latter appeal was heard separately and the opinion is to be handed down simultaneously with this opinion. 691 S.W.2d 312.

The trial court referred this case to the Hon. Franklin Ferriss as a special master. The master took evidence at various times over a period of three months and made extensive findings of fact and conclusions of law. Neither party has filed a transcript. The findings of fact of the trial court are accepted as the facts on appeal.

Husband, conceding the facts as found by the trial court, contends that the court misapplied the law and abused its discretion in the division of marital property as more fully set out hereafter. We modify and affirm as modified.

The parties were possessed of $3,289,896 in marital property. Separate property set aside to husband had a value of $6786. Wife's separate property was valued at $663,676.

The trial court awarded wife marital property that had a value of $2,846,817, consisting of cash, securities, household furnishings, personal property and the marital home. The court valued the equity in the home at $235,000. Husband was awarded marital property having a value of $443,079.

The parties were married in 1961. Except for the very beginning of their marriage, sex between them was extraordinarily infrequent and ceased after the birth of the second son in 1976. Wife was a willing partner but unsatisfactory to husband who admitted to having two affairs, the first within the first four or five years of the marriage, the second in 1970 to 1972. Husband then promised to be faithful and wife accepted the promise and husband remained faithful until they separated after wife filed this action.

Although some professional counseling was obtained its full potential was not realized because of insufficient interest or determination on the part of both husband and wife.

Wife's family owned all of the stock of Worth's Inc., a chain of retail stores. Husband went to work for the company in 1971 in a very responsible position. During the time he worked there the company doubled in size. He was a workaholic, spending extremely long hours on company business. This contributed to wife's strong feelings that he was neglecting the family.

Wife held 600 shares of Worth's Inc. which were given to her by her mother during the period of 1958–1970. All of the stock of the company was sold to another organization through the efforts of wife's father, A.J. Goldfarb in April of 1979. At that time husband had a contract of employment that provided for a salary of $179,000 per year. After the sale he continued work for the company as executive vice president under the employment contract which was to expire in January of 1984. The new management advised husband that his income would be reduced significantly upon termination of the contract. Wife worked part time for Worth's Inc. from 1962 to July 1980 for which she received a maximum of $12,000 per year.

Wife received $1,980,000 for her stock in Worth's. She turned these funds over to

her father to invest for her as he saw fit. Mr. Goldfarb invested the principal and reinvested the income from those investments in cash accounts and securities. As of December 31, 1982, this fund had a value of $2,355,876 consisting of securities and two cash accounts, an increment of $375,876. Wife had spent a relatively small amount of the income from these funds to pay some of the taxes and to purchase some of her clothing.

Before the marriage wife's father gave her 1500 shares of A. Goldfarb Inc., after the marriage he gave her an additional 6900 shares of stock in this closely held corporation. She also received gifts of public corporate stocks and of insurance policies on the life of her father. The trial court found these gifts to be wife's separate property which had a value of $663,676. No question is raised upon appeal as to the status or value of wife's separate property.

We will make reference to other facts as the issues are discussed.

■ An orderly disposition of this case requires that we first consider wife's argument that $2,355,876 in securities and cash accounts awarded to her as marital property was in fact her separate property.

Income from separate property during the marriage has been held to be marital property. *Norman v. Norman,* 604 S.W.2d 680, 683 (Mo.App.1980). When the proceeds of separate property are commingled with the proceeds of marital property all such property becomes marital property. *Jeager v. Jeager,* 547 S.W.2d 207, 211 (Mo. App.1977). By investing and reinvesting the proceeds from the sale of the Worth's Inc. stock and the income from those investments, the funds were commingled and all of the securities became marital property. *Jeager v. Jeager, supra.*

Husband contends that the trial court failed to give him proper credit for his contributions to the marital home; failed to give proper consideration to the separate property of wife and gave too much weight to the court's finding of misconduct on the part of husband.

The trial court is required by § 452.330 RSMo 1978 to divide the marital property as the court deems just considering all relevant factors including:

(1) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(2) The value of the property set apart to each spouse;

(3) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children; and

(4) The conduct of the parties during the marriage.

In considering the first factor there is no doubt that wife made by far the greatest direct contribution to the marital property by way of the proceeds of the sale of the Worth's stock.

The trial court found that husband's "very responsible duties" as an officer of Worth's made a sizeable but indirect contribution to the value of Worth's stock, but that this contribution was not subject to being quantified. Husband who made a substantial income paid all of the household expenses during the marriage. Wife made no contribution to these expenses and could thus use her income with the assistance of her father to increase the value of the marital property that originated with wife.

Husband had inherited $45,790 from his mother in August of 1973 which he commingled with his earnings and income from the inherited funds. As a result this property and its increment are marital property. As of December 31, 1982 this marital property was worth $200,161.

The court concluded that wife's contribution as prime homemaker was not such "as to require this $200,161 marital asset to be divided between" the parties. Neither was husband's "contribution as prime supporter

of the family such as to require the $2,355,-876 marital asset ... to be divided between" them.

The family home was purchased in 1978 for $375,000. The parties paid $150,000 in cash and executed a note and deed of trust for the balance. They had previously owned a home that they purchased for $39,000. Wife's family had given them $19,000 in cash that was used as a down payment and they borrowed the balance. They sold the home for a net of $130,000. The proceeds of the sale and $20,000 in marital property were used as the cash payment on the present home. Husband made all of the payments on the note for the first house and all payments on the present house until he moved out in June of 1982. Wife made the payments thereafter. On December 31, 1982, the value of the equity in the family home was $235,-000.

The trial court treated the $19,000 gift as wife's contribution to the acquisition of the first home. It then noted that wife devoted "full-time to homemaking after she was terminated" at Worth's in July of 1980 but by contrast "husband continued to devote full-time to the business and had very little time in the house or in the yard." The court concluded that wife had contributed at least as much to if not more to the acquisition of the equity in the house than husband. Although we realize that wife devoted most of her time to homemaking we feel that the trial court may well have given too great a weight to wife's contribution as a "full-time homemaker" in view of the fact that she occupied the full-time role for only 9 months before she filed the present action. As we read the facts the $19,000 payment toward the purchase of the first house was a gift to husband and wife even though it came from her family. The husband made all of the house payments on both houses except for the six months before the valuation date of the equity in the house.

Wife made a considerable contribution by way of the proceeds of the stock of Worth's Inc. and as homemaker to the $3,289,896 in marital property. Husband also made a considerable contribution in providing for the very comfortable life style of the parties without the use of the income from the various investments of the parties. His efforts as an overly industrious employee of Worth's did serve to enhance the value of the stock. Although this factor is weighted more heavily toward wife, husband's contribution is not negligible and should be given some consideration.

The second factor, value of property set apart to each spouse is obviously weighted most heavily in husband's favor. Wife received $663,676 while husband's separate property is valued at $6786. *See Cain v. Cain*, 536 S.W.2d 866, 875 (Mo.App.1976). We note however that most of wife's separate property consisted of stock in A. Goldfarb Inc., which produced only about $7000 per year in ordinary income.

The third factor requires the trial court to view the economic circumstances of the parties at the time the division of property becomes effective. The trial court concluded that wife's employment experience would qualify her for a minimal income starting at about $12,000 while husband would be capable of earning approximately $179,000. As noted above, wife's separate property consisted primarily of stock of A. Goldfarb, Inc. valued at $617,183 but producing only a little over $7000 per year in income. Husband's separate property produces no income.

The trial court awarded no maintenance. The court thus concluded that in order to maintain the high standard of living of the parties the wife would require considerable income producing marital property. The trial court noted that husband's small amount of separate property produced no income and concluded that husband would also need some income producing marital property in order to maintain his very comfortable standard of living. The court concluded that under this factor that husband was not as dependent on an award of marital property as wife.

In considering "the conduct of the parties during the marriage" the court be-

lieved the frustration derived from sexual problems of the parties took a heavy toll resulting in the diminished caring for each other which contributed to husband's two extramarital affairs. Wife was a willing partner but husband's lack of interest in having sex with wife was probably a chief factor in the failure of the marriage.

The trial court also faults husband for his "stubborn refusal to give more time to his home life." Husband admitted that he was a workaholic. The court held that this contributed to wife's "strong feeling that husband neglected her and the children."

Although these matters contributed to the breakdown of the marriage we do not believe that they should be given too much weight in the distribution of marital property. The husband's extramarital affairs ceased almost ten years before the marriage was dissolved and neither party had the interest or determination to solve their sexual problems. The fact that husband was a workaholic is a two edged sword. It produced a substantial income which resulted in direct and indirect enhancement of the marital assets and provided the very comfortable standard of living that the family enjoyed. Husband's work habits also contributed to the deterioration of the marriage.

■ With all due deference to the monumental task undertaken by the master and the trial court in this most difficult case we feel that some modification should be made to bring about a more just division of marital property.

As referred to in *Fields v. Fields*, 643 S.W.2d 611, 616 (Mo.App.1982) the Dissolution of Marriage Act's conceptual emphasis is on marriage as a partnership. The courts should as far as possible make provision for the parties as near to their former standard of living as possible with due consideration for the factors set forth in § 452.330.

Fortunately in this case there are sufficient assets and sufficient earning capacity on the part of husband to permit the parties to maintain their high standard of living.

■ The courts should look to the total amount of marital property as a unit rather than view the various assets as separate items and then consider "all relevant factors" and make a just division in cash and kind as is most convenient to the parties.

The trial court conscientiously viewed each of the enumerated factors as set out in its findings of fact and conclusions of law. It properly felt that wife's direct contribution to marital property was heavily weighted in wife's favor. Husband's direct and indirect contribution, however, was not negligible. Wife had a great deal more in the way of separate property. This property, however, does not generate a significant cash flow. Wife will receive no maintenance and will share the support of the children with husband. Husband has by far the greater capacity to work and earn. The marital misconduct on the part of the husband must be given some but not great weight in the division of marital property.

■ After considering all relevant factors we feel, as did the trial court, that a just division of the marital property requires that a considerably larger portion of that property be distributed to wife but also feel that husband should be given some additional property. We are cognizant of the fact that each case of this nature is unique. There is no mathematical formula by which marital property may be divided. The court has and was intended to have great flexibility in dividing marital property so as to accommodate the needs of the parties. *In Re Marriage of Harrison*, 657 S.W.2d 366, 370 (Mo.App. 1983). The division of marital property need not be equal but must be just. *In Re Marriage of Hedrick*, 659 S.W.2d 352, 353 (Mo.App.1983).

■ We are of the firm belief that a just division of the marital property requires that husband receive an additional $120,000 in cash as his share of the marital property.

In all other respects that portion of the judgment covered by this appeal is affirmed.