**Janice Sue MESERVEY, Respondent–Appellant,**

v.

**Ralph Warren MESERVEY, Appellant–Respondent.**

**Nos. WD 45446, WD 45451.**

Missouri Court of Appeals,
Western District.

Sept. 22, 1992.

James P. Valbracht, Cleaveland, Macoubrie, Cox, Valbracht and Elliott, Chillicothe, for Janice Sue Meservey.

Richard N. Brown, Brown & Casey, Brookfield, for Ralph Warren Meservey.

Before HANNA, P.J., and FENNER and ULRICH, JJ.

ULRICH, Judge.

Ralph Warren Meservey appeals, and his former wife, Janice Sue Meservey, cross-appeals from portions of the decree dissolving their twenty-seven-year marriage. The points on appeal concern property distribution and the award of attorney fees.

The decree is modified in part, and affirmed as modified.

The Meserveys and their five children lived on a farm, and made their livelihood from farming. As a farm wife, Ms. Meservey planted and maintained a large garden, raised chickens, took meals to her husband and field workers, assisted in feeding the livestock, moved and drove farm machinery, and located parts for repairs. In addition to her farm duties, Ms. Meservey was principally responsible for rearing the five children, and for the cooking, cleaning, and washing.

Mr. Meservey worked with his brother, James Meservey, for Marshall Meservey Farms, Inc., a closely held corporation established by their parents. The company was a farming operation, and as a farmer, Mr. Meservey raised crops and livestock.

After the Meserveys separated in 1987, Ms. Meservey moved into a rental house in Chillicothe with two daughters, the couple's remaining unemancipated children. Ms. Meservey obtained employment with the Livingston County Memorial Library. She supplemented her income with seasonal work at J.C. Penney and by babysitting. She also attended college classes to complete an associate degree. The two daughters attended college and commuted to school while living with Ms. Meservey.

In the dissolution decree, the trial court found that each spouse had equally contrib-

uted efforts to the acquisition and maintenance of marital property. Noting that both Mr. and Ms. Meservey had engaged in inappropriate conduct at times, the trial court equally divided the spouses' marital property interests. After determining separate and marital interests, the trial court awarded the property to Mr. Meservey and money judgments to Ms. Meservey. The following chart summarizes the disposition of property:

| Property Classification By Trial Court | Property Description | Total Value of Property Awarded To Mr. Meservey | Money Judgments Awarded To Ms. Meservey |
| --- | --- | --- | --- |
| Separate | Farm land, vehicle, certificates of deposit; | $396,291.52 | |
| Marital | Vehicles, crops, bank accounts, investment account, insurance policies; | $98,777.47 | $49,388.74 |
| Non–Marital and Marital | One-half interest in Ireland Farm; | $18,140.00 (Separate) $46,860.00 (Marital) | $23,430.00 (Marital) |
| Separate Non–Marital With Marital Interest | Stock in Marshall Meservey Farms, Inc. | 1,142,646.00 | 102,067.75 |
| Totals | | 1,702,714.99 | 174,886.49 |

In additional findings, the trial court determined Ms. Meservey's gross annual earnings from her library job to be $10,404. The trial court found that Mr. Meservey had gross annual income of $70,140 from salary, bonuses, self-employment income, rental income, and interest income. Yet, the trial court recognized that, as a consequence of the property division, Mr. Meservey's income would drop to $57,890 per year. The trial court also ordered Mr. Meservey to pay to Ms. Meservey $600 as monthly maintenance, and her attorney fees. Placing custody of the two unemancipated daughters with Ms. Meservey, the trial court ordered Mr. Meservey to pay monthly child support of $400 per daughter to Ms. Meservey, to maintain health insurance for the daughters and to provide the daughters' college expenses.

Under the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), a contested portion of a dissolution decree must be affirmed if it is supported by substantial evidence, is not against the weight of the evidence, and neither erroneously declares nor applies the law.

### I.  *Investment Account*

Mr. Meservey argues that no substantial evidence supported finding the existence of the investment account that was classified as marital property and was valued at $38,476. He maintains that he inadvertently failed to disclose investments in interrogatory answers and that opposing counsel "put words in his mouth" at the dissolution hearing.

Contrary to Mr. Meservey's argument, the record sufficiently supports the exis-

tence of the investment account. Mr. Meservey's 1990 tax return revealed short term investments in stock of $38,476. At the hearing, Mr. Meservey admitted that he had invested as much as $50,000 in the stock market during the marriage. Mr. Meservey's point is denied.

## II. *Stock in Marshall Meservey Farms, Inc.*

Both parties raise issues regarding the allocation of increase in value of the stock of Marshall Meservey Farms, Inc.

Mr. Meservey's parents, Marshall and Alpha Meservey, formed Marshall Meservey Farms, Inc., to implement their estate plan and to induce their children to continue the family farming enterprise. The elder Meserveys made gifts and bequests of the corporate stock to their three children, their children's spouses, and their grandchildren. After Marshall Meservey's death in 1978, Mr. Meservey and his brother, James Meservey, assumed responsibility for the daily operation and the management of the corporation. Upon Alpha Meservey's death in 1987, Mr. Meservey owned 453 shares of stock, representing a 31.72% ownership interest in the corporation; Ms. Meservey owned 18 shares, representing a 1.26% ownership interest. The stock was valued at $1,135.73 per share on Alpha Meservey's federal estate tax return. Although the corporation remained in good standing after the elder Meserveys' deaths, the Meservey brothers failed to comply with certain corporate formalities, and conducted business more like a family partnership.

At the dissolution hearing, the Meserveys presented expert testimony on the value of the Marshall Meservey Farms stock. Ms. Meservey called a certified public accountant who had reviewed Alpha Meservey's federal estate tax return, the income tax returns of Marshall Meservey Farms, Inc., from 1986 to 1990, discovery responses, and real estate appraisals. Using the balance sheet approach, the CPA determined that the value of each share at the close of 1990 to be $2,426.54. The CPA attributed the increase in value of the stock to the management efforts of Mr. Meser-

vey and his brother. In calculating the amount of increase in value attributed to the Meservey brothers' management, the CPA disregarded increases in value of corporate land, and used various approaches: the book value method, the tax return method, the net increase method, and the balance sheet method. Under the various approaches, the increases in value per share ranged from $378.02 to $685.95, with an average of $538.74.

Mr. Meservey presented the testimony of a bank president who had examined the corporate tax returns for the two preceding years and the articles of incorporation. The banker valued the stock at $100 per share because the articles of incorporation set par value at that amount and because the articles required the seller of any outstanding shares to first offer them to the corporation for purchase at par value. According to the banker, no investor would be willing to purchase Mr. Meservey's minority interest in the closely-held corporation. In his own testimony, Mr. Meservey denied any increase in the value of the stock but attributed any corporate profits to favorable weather conditions.

In its findings, the trial court noted that during their marriage Mr. and Ms. Meservey had devoted themselves to preserving and improving the family farming operation, both corporate and non-corporate. The court also recognized the contributions of Mr. Meservey and his brother as skillful and intelligent farmers. The court determined the value of the stock to be $2,426 per share, and the increase in value from 1987 to 1990 to be $537.01 per share. According to the trial court's calculations, Mr. Meservey's shares increased in value by $243,265; Ms. Meservey's shares increased in value by $9,666. Characterizing one-half of the increase in each spouse's shares as marital property and one-half as separate property, the trial court divided the marital portion of the increase equally. The following chart shows the allocation of the stock after allowances for the increase in value:

|  | MR. MESERVEY | MS. MESERVEY | TOTALS |
|---|---|---|---|
| SHARES OWNED | 453 | 18 | 471 |
| VALUE OF SEPARATE SHARES | $1,098,978.00 | $43,668.00 | $1,142,646.00 |
| INCREASE IN MARITAL PORTION | ($60,816.25) | ($2,416.50) | ($63,232.75) |
| INCREASE IN OTHER SPOUSE'S MARITAL PORTION | $2,416.50 | $60,816.25 | $63,232.75 |
| ALLOCATION | $1,040,578.25 | $102,067.75 | $1,142,646.00 |

Mr. Meservey asserts that no law, statutory or decisional, supports the apportionment of the increase in value of his Marshall Meservey Farms stock, which was indisputably separate property. He charges the trial court with misapplying the source of funds rule and with relying on insufficient evidence.

■ Section § 452.330.2, RSMo Supp. 1991, defines "marital property" as "all property acquired by either spouse subsequent to the marriage," unless it is listed in the enumerated exceptions. Judicially adopted in *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 825 (Mo. banc 1984), the source of funds rule accords a dynamic rather than a static connotation to the term "acquired." As a result, "acquired" connotes "an on-going process of making payment for acquired property." *Id.* The source of funds of the property determines the character of property as marital or separate. *Id.* at 824. Property is "acquired" as it is paid for so that a portion of the property's ultimate value will be marital. *Id.*

■ Under *Hoffmann, id.*, and later statutory enactment in § 452.330.2(5), the increase in value of separate property can constitute marital property if marital assets or labor contributed to "acquiring" that increase, but then, only in proportion to the marital contributions. According to the source of funds approach, the marital share of the increase in value is proportionate to the amount of marital funds or effort devoted to its acquisition. *Hoffmann*, 676 S.W.2d at 825.

■ Marital labor, effort, or services will entitle a spouse to a proportionate share of the increase in value of the other spouse's separate property only after comprehensive substantiation. Entitlement to a share of the increased value based on marital effort requires proof of (A) a contribution of substantial services;[1] (B) a direct correlation between those services and the increase in value;[2] (C) the amount

1. Performance of usual spousal duties is not such a substantial contribution of effort as to cause the increase in value of separate property to be marital property. *In re Marriage of Herr*, 705 S.W.2d 619, 623 (Mo.App.1986). The wife's services as homemaker, traveling companion, and entertainer were not sufficiently extensive to warrant her sharing in the increase in value of the husband's corporate stock. *Hoffmann*, 676 S.W.2d at 826. Purely maintenance and repair activities, such as painting rooms, do not enhance the value of real property for the purpose of separate and marital property determinations. *Winter v. Winter*, 712 S.W.2d 423, 427 (Mo.App.1986). The wife's efforts in making

her husband's house more comfortable failed to account for any enhancement in the house's commercial value. *Rickard v. Rickard*, 691 S.W.2d 391, 393 (Mo.App.1985).

2. Enhancement in value of a spouse's separate property solely resulting from appreciation, inflation, changing economic conditions, or circumstances beyond the spouse's control is not jointly acquired property. *Herr*, 705 S.W.2d at 622. Because the husband failed to show that his labor increased the value of his wife's nursery school business, he established no basis for the application of the source of funds rule. *Bizzell v. Bizzell*, 697 S.W.2d 559, 562 (Mo.App.

of the increase in value;[3] (D) performance of the services during the marriage;[4] and (E) the value of the services,[5] the lack of compensation,[6] or inadequate compensation.[7]

Here, the Marshall Meservey Farms stock was separate property because each spouse individually acquired it by gift and by inheritance. Section 452.-330.2(1). Sufficient evidence supported the finding of increase in value during the marriage and the amount of the increase. At issue here is whether marital effort contributed to the increase in value. To the extent that the trial court relied on Ms. Meservey's efforts as a farm wife, it misapplied the law in apportioning the increase in value. The record evinces Ms. Meservey's devotion to the family farming operation without compensation and in addition to her usual family duties: she took meals to field workers, fed the livestock, moved farm machinery, and located parts for repairs. However, she failed to show the value of those services and to prove any connection between the performance of those services and the increase in the value of the corporate stock. Under the circumstances presented here, the applicable law refuses to recognize those services as substantial marital effort. See Hoffmann, 676 S.W.2d at 826; Winter, 712 S.W.2d at 426–27; Herr, 705 S.W.2d at 623.

The evidence of Mr. Meservey's services to the corporation also falls short of the requisite quantum of proof. Mr. Meservey received compensation for his services to the corporation, amounting to $33,000 a year. Although Mr. Meservey and his brother conducted much of the business as a partnership and determined their own bonuses, those endeavors did not deprive the marital partnership of income. Income and increase in value are not the same: income, even from separate property, is marital property; increase in value can be marital property if the marital partners sacrifice marital funds or labor in acquiring the increase. See Drikow v. Drikow, 803 S.W.2d 122, 124–25 (Mo.App.1990); In re Marriage of Schatz, 768 S.W.2d 607, 611 (Mo.App.1989). Nothing in the record suggests that Mr. Meservey received inadequate compensation or sacrificed compensation in order to enhance the value of the corporate stock. See Heilman, 700 S.W.2d at 845 & n. 1; Hoffmann, 676 S.W.2d at 826. Because the marital partnership benefitted from Mr. Meservey's salary and bonuses from the corporation, Ms. Meservey cannot claim a proportionate share of the enhanced value of the stock on the basis of Mr. Meservey's labor.

The trial court misapplied the law and relied on insufficient evidence in classifying a portion of the increase in value of the Marshall Meservey Farms stock as marital property. Consequently, the Meserveys

1985). The wife's lack of reliance on her husband's advice on managing her stock account defeated the husband's claim that his efforts had increased the value of the stock. *Barth v. Barth,* 790 S.W.2d 246, 250 (Mo.App.1990).

3. The exact amount of the increase in value is necessary to properly apply the source of funds rule. *Winter,* 712 S.W.2d at 427.

4. Any increase in value of the wife's property brought about by the husband's services performed before the marriage was not marital property. *Schneider v. Schneider,* 824 S.W.2d 942, 947 (Mo.App.1992).

5. To substantiate entitlement to an interest in enhanced value, the wife was required to prove the value of her own efforts in improving her husband's house. *Winter,* 712 S.W.2d at 426–27.

6. The wife could not claim a share in the enhanced value of her husband's corporation with-

out showing that the husband sacrificed payment of marital funds, by way of salary or dividends, in increasing the value of the corporate stock. *Hoffmann,* 676 S.W.2d at 825–26.

7. Where the corporate owner-spouse receives compensation, the other spouse can show entitlement to an interest in increase in value by proof that the owner-spouse had the power to influence the compensation paid and that the owner-spouse received inadequate compensation. *Heilman v. Heilman,* 700 S.W.2d 843, 845 & n. 1 (Mo. banc 1985). The wife could not claim a share in the increase in her husband's interest in a dairy farm corporation because both spouses received salaries for their work on the farm, and because the husband, as a minority shareholder, could not unilaterally minimize salary or restrict dividends. *Milde v. Milde,* 723 S.W.2d 471, 473 (Mo.App.1986).

are entitled to the full value of their separately-owned shares. Therefore, Mr. Meservey's 453 shares valued at $1,098,978 are his separate property; Ms. Meservey's 18 shares valued at $43,668 are her separate property. The trial court granted Ms. Meservey a money judgment of $102,067.75 for her separate shares and, erroneously, for the increase in value of Mr. Meservey's shares. In the interest of laying litigation to rest and settling the rights of the parties, Rule 84.14 authorizes appellate courts to enter the judgment or award the trial court should have entered. *Oldfield v. Oldfield*, 688 S.W.2d 778, 781 (Mo.App. 1985); *cf. Goldberg v. Goldberg*, 691 S.W.2d 317, 321 (Mo.App.1985) (in which the court of appeals increased the husband's marital property award by $120,000 in addition to $443,079 awarded by the trial court). Having the authority under Rule 84.14 to enter the judgment that the trial court should have entered, this court reduces that money judgment to Ms. Meservey to $43,668.

■ In a sub-point related to the classification of the Marshall Meservey Farms stock, Mr. Meservey disputes the valuation of the stock. He unavailingly premises error on the trial court's acceptance of the testimony of the CPA called by Ms. Meservey. The trial court is entitled to believe or disbelieve testimony, including expert testimony, of either party concerning property valuations. *In re Marriage of Gourley*, 811 S.W.2d 13, 20 (Mo.App.1991). This point is denied.

Ms. Meservey's assertion in her cross-appeal of error in classifying only one-half of the stock's increase in value as marital property is rendered moot by the determination that the increase in value of the separate property was separate property.

## III. *Division of Marital Property*

As a part of her cross-appeal, Ms. Meservey claims abuse of discretion in the equal division of the marital property. Maintaining that the trial court improperly considered the factors in § 452.330.1, Ms. Meservey asserts that the trial court disregarded the spouses' disparate economic circumstances and the disparate value of each spouse's separate property. In support, Ms. Meservey emphasizes that her earning capacity was reduced by her forsaking career plans and devoting herself to family and the farming operation during the twenty-seven year marriage. She notes that Mr. Meservey prospered as a farmer during the marriage and will continue to do so, while she is relegated to a position paying little more than the minimum wage. She cites their individual gross incomes—$10,404 for her and $70,140 for Mr. Meservey— as indicative of their disproportionate financial conditions. Ms. Meservey also stresses the disparity between the value of the separate property set over to each spouse.

■ Two principles inherent in § 452.-330 guide marital property divisions in Missouri: first, the property division should reflect the concept of marriage as a shared enterprise similar to a partnership; second, the property division should be utilized as a means of providing future support for an economically dependent spouse. *Goller v. Goller*, 758 S.W.2d 505, 508 (Mo.App.1988). This court recognizes that Ms. Meservey will be required to rely on the marital property award to achieve economic independence. In meeting living expenses, continuing her education, and providing for retirement, she will consume interest income and principal from both marital and separate property.

Ms. Meservey's argument against the equal marital property division becomes more compelling in light of this court's adjustment, which eliminated Ms. Meservey's marital interest in the Marshall Meservey Farms stock and which increased Mr. Meservey's separate property. The following chart summarizes the Meserveys' relative interests in separate and marital property after this court's adjustment thus far:

| | Mr. Meservey | Ms. Meservey |
|---|---|---|
| Separate Property | $1,513,409.52 | $43,668.00 |
| Marital Property | $72,818.74 | $72,818.74 |
| Totals | $1,586,228.26 | $116,486.74 |

■ After consideration of the circumstances and the guiding principles in dividing marital property, this court finds that its adjustment disrupted the trial court's scheme in equally dividing the marital property valued at $145,637.48. Where the trial court scheme is disrupted, an appellate court may recalculate the cash award to equalize the property division. *Hendricks v. Hendricks*, 759 S.W.2d 903, 904 (Mo.App. 1988). Finding the record sufficient to make an accurate and fair award, this court determines that Ms. Meservey's marital property award shall be increased by fifteen percent or by $21,845.50. When added to her previous award, the total marital property award to Ms. Meservey equals $96,664.24, which represents sixty-five per cent of the marital property. Ms. Meservey is accordingly awarded a money judgment for $94,664.24 against Mr. Meservey for her share of the marital property.

## IV. *Attorney Fees*

Mr. Meservey contends that the trial court abused its discretion in awarding Ms. Meservey excessive attorney fees during and after the dissolution proceedings. The trial court ordered Mr. Meservey to pay $9,500 during litigation, an additional $9,000 in the decree, and $2,500 toward payment of the fees for this appeal. Mr. Meservey asserts that Ms. Meservey should bear the responsibility for her own attorney fees because she received substantial sums in the dissolution decree. Mr. Meservey also claims that the trial court "guessed" at the amount of the award for attorney fees on appeal. He suggests the appellate court is in a better position to make that award.

■ In awarding attorney fees, the trial court is considered expert in the necessity, reasonableness, and value of the legal services. *May v. May*, 801 S.W.2d 728, 734 (Mo.App.1990). An award of attorney fees in a dissolution proceeding will not be overturned on appeal absent a manifest abuse of discretion. *Id.* To demonstrate an abuse of discretion, the complaining party bears the burden of showing the award to be clearly against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice. *Mistler v. Mistler*, 816 S.W.2d 241, 256 (Mo.App. 1991).

■ Mr. Meservey failed to meet his burden. A spouse's inability to pay is not a requirement for awarding attorney fees. *Podrecca v. Podrecca*, 794 S.W.2d 329, 332 (Mo.App.1990). One spouse's greater ability to pay is sufficient to support an award of attorney fees to the other spouse. *In re Marriage of Stuart*, 805 S.W.2d 309, 314 (Mo.App.1991). The trial court has discretion to award attorney fees to a spouse who was awarded sufficient assets to cover those fees. *Id.*

■ Here, substantial disparities existed between the Meserveys' earning capacities and the value of their separate property. Even though Ms. Meservey received money judgments in the decree, the award of attorney fees was within the trial court's discretion. On the matter of setting attorney fees on appeal, the court of appeals lacks jurisdiction to make the initial determination. *Martin v. Martin*, 815 S.W.2d 130, 132 (Mo.App.1991). Only the trial court has authority to award attorney fees on appeal in a dissolution of marriage proceeding. *Id.* This point is decided against Mr. Meservey.

The decree is modified in the following respects: Ms. Meservey's money judg-

ments against Mr. Meservey are reduced to $138,332.24 in addition to the attorney fees awarded by the trial court. The reduced money judgments shall continue to accrue interest at the judgment rate of nine percent per annum and shall be paid by Mr. Meservey in installments according to the following schedule:

a. $40,000.00 plus accumulated interest within thirty days from the date judgment of this court becomes final;

b. installment of $50,000.00 plus accumulated interest by November 1, 1992;

c. final installment of $48,332.24 plus accumulated interest by November 1, 1993.

The decree is accordingly affirmed as modified.

All concur.