Theresa WATKINS, Respondent,

v.

Warren WATKINS, Appellant.

No. WD 51041.

Missouri Court of Appeals,
Western District.

May 21, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 2, 1996.

Robert Sniezek, Kansas City, for appellant.

F. Allen Speck, Kansas City, for respondent.

Before HANNA, P.J., FENNER, C.J., and ELLIS, J.

HANNA, Presiding Judge.

Warren Watkins appeals a decree of dissolution, which dissolved his marriage to Theresa Watkins, claiming that the trial court's decision concerning the division of property, award of maintenance, child support, and to order the evaluation of the appellant's business was against the weight of the evidence. The appellant is a shareholder in a closely held, family funeral home business, which is a primary point of contention on appeal.

The trial court dissolved the marriage and awarded custody of the parties' two unemancipated children and child support to the respondent wife. The court also ordered the appellant to pay lump sum maintenance of $120,000, marital debts totalling $515,647, attorney fees in the amount of $2725, expert witness fees of $2145, and to provide health and medical insurance for the children. The respondent was ordered to pay debts totalling $30,393.50. Finally, the trial court ordered the appellant to provide life insurance in his name and for the benefit of the children in the amount of $100,000 each.

Review is under Rule 73.01(c). This court will affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *In re Marriage of Lafferty,*

788 S.W.2d 359, 361 (Mo.App.1990). The appellate court will give due regard to the trial court's determination of the credibility of witnesses, Rule 73.01(c), because the trial judge is in a better position than this court to determine the credibility of the parties and witnesses, matters which will not necessarily be shown by the record. *In re Marriage of Chilton*, 576 S.W.2d 584, 585 (Mo.App.1979).

■ In the appellant's first point, he complains that the trial court erred in ruling that his 25 percent increase of ownership interest in the family business was marital property. Based on that finding, the court awarded the respondent lump sum, non-modifiable maintenance in the amount of $120,000. The trial court's findings of fact described the transaction as a purchase, stating that the appellant purchased a 25 percent ownership interest in the business when his aunt sold her stock to the business in August 1988. As a result of the aunt's sale of her stock to the corporation, the appellant and his sister, who each held 1,019 shares both before and after the transaction, became 50 percent owners. The court found that the increase of appellant's ownership interest from 25 percent to 50 percent constituted marital property.

The parties were married February 14, 1982. Before their marriage the appellant owned a 25 percent interest (1,019 shares) in Watkins Brothers Memorial Chapel, Inc.[1] The appellant's aunt, LaVerne Watkins Thomas, owned 50 percent (2,038 shares), and the appellant's sister owned 25 percent. During the marriage, in August 1988, the corporation redeemed the stock owned by Ms. Thomas. The Douglas State Bank loaned the corporation $350,000 to retire the stock. This transaction left the appellant and his sister each with 1,019 shares, which had the effect of increasing their ownership interest to 50 percent each. Because the trial court found that the increase in the ownership interest from 25 percent to 50 percent was a stock purchase, the court or-

dered the appellant to pay the respondent a lump sum maintenance award of $120,000, in settlement.[2]

In *Hoffmann v. Hoffmann*, 676 S.W.2d 817 (Mo. banc 1984), the Missouri Supreme Court dealt with the status of property in a factual situation very similar to the one in this case. The property interest considered in *Hoffmann* was the husband's interest in his family's closely held corporation.

Before the marriage, the husband owned 256 shares, representing 16.17 percent of the outstanding shares of the business. During the marriage, the business purchased and retired 858 shares owned by the husband's father. The husband disposed of a small number of shares, leaving him with 223 shares, which constituted a 29.5 percent interest in the business. The wife argued that the husband's increase in percentage ownership and value of corporation stock was marital property.

The wife first asserted that the increase in the percentage of ownership of the corporation transformed the stock into marital property. The court rejected this argument based upon § 452.330.2(2), which provides that any property acquired during the marriage in exchange for property acquired prior to the marriage is separate property. The court found this exchange provision appropriate "because the worth of the corporation was diminished by the amount paid from the corporate treasury to repurchase the father's stock." *Id.* at 822. The smaller percentage owned prior to the marriage was exchanged for a larger percentage of the business, which was worth less. Thus, the increased percentage of ownership did not transform any of the stock into marital property. *Id.* at 823.

The wife then claimed that the increase in the percentage of ownership interest and value of the corporation stock was marital property because the increase in value was due, in part, to her efforts. *Id.* In analyzing this

---

1. Watkins Brothers Memorial Chapel, Inc., is a closely held family business that originated in 1909, and is subject to a restrictive stockholders' agreement, which restricts ownership of the business to the Watkins' "blood line."

2. The trial court considered 25% of the corporate stock to be nonmarital. There was no finding or order entered disposing of the nonmarital stock. On remand, the court should dispose of the appellant's nonmarital property. *Mabon v. Mabon*, 833 S.W.2d 488, 489 (Mo.App.1992).

argument, the court adopted the "source of funds" rule, which provides that the character of property is determined by the source of funds financing the purchase. *Id.* at 824–25. Thus, if the wife could establish that marital assets or labor contributed to the increase in value, then the increase in value would be marital property. In applying this rule, the court found that no uncompensated marital efforts were attributable to the increased value of the stock. *Id.* at 825. Therefore, the increase in the percentage of ownership interest was not marital property.

Section 452.330.2(5), RSMo Supp.1996, recognizes that an increase in the value of separate property may constitute marital property, if marital efforts contributed to the increase. This provision provides:

2. For purposes of sections 452.300 to 452.415 only, "marital property" means all property acquired by either spouse subsequent to the marriage except:

. . .

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

Entitlement of one spouse to a proportionate share of the increase in the value of the other spouse's separate property requires proof of: (a) a contribution of substantial services; (b) a direct correlation between those services and the increase in value; (c) the amount of the increase in value; (d) performance of the services during the marriage; and (e) the value of the services, lack of compensation, or inadequate compensation. *Knapp v. Knapp,* 874 S.W.2d 520, 524 (Mo.App.1994); *Meservey v. Meservey,* 841 S.W.2d 240, 245–46 (Mo.App.1992). The respondent attempts to argue this last factor, that the appellant received inadequate compensation from the business, entitling the respondent to a proportionate share of the increased value of the stock.

*Heilman v. Heilman,* 700 S.W.2d 843 (Mo. banc 1985), stands for the proposition that where one spouse "sacrificed payment of marital funds, by way of salary or dividends, in order to increase the value of the corporation's stock," the other spouse may take advantage of the source of funds rule. *Id.* at 845, *citing Hoffmann,* 676 S.W.2d at 826. To do so, the spouse seeking entitlement must show that the corporate owner-spouse had the power to influence the compensation paid and that the owner-spouse received inadequate compensation. *Meservey,* 841 S.W.2d at 246 n. 7.

The respondent argues that the appellant had the power to influence the compensation paid to him and that $16,666.72 was an inadequate salary from the business, which had assets exceeding two million dollars and gross receipts exceeding $690,000 annually. The respondent contends that the facts of this case fit squarely within the exception articulated in *Heilman* and *Meservey.* We understand the respondent's argument to suggest that what should have been the appellant's salary was instead used to acquire equipment and in the servicing of new debt, which the corporation incurred to acquire assets such as farm property and shares of its own stock.

In that respect, the respondent showed the difference between the salaries of the sister and the appellant. However, the evidence showed that the sister is the director of the funeral home, holds all of the necessary licenses, and is responsible for the day-to-day activities, bookkeeping, and scheduling. The appellant, meanwhile, operates as the embalmer and earns a salary comparable to other embalmers in the community. The testimony was that the salaries of the appellant and his sister were set according to the work that they did.

The respondent's attempt to place this case within the exception of *Heilman* and *Meservey* fails because of a complete lack of proof. There is no evidence of any substantial services performed, let alone a direct correlation between any services during the marriage and the increase in the stock's value. While there was evidence of a difference in the salaries of the two 50 percent shareholders, it is of little evidentiary significance and, nevertheless, was adequately explained. There was evidence of an increase in the

stock's value. However, in the absence of proof of the value of any services performed and the connection between their performance and any increased value of the property, the case law will not recognize a marital interest in the property. *Patroske v. Patroske, (In re Patroske)*, 888 S.W.2d 374, 379 (Mo.App.1994). Thus, *Hoffmann* controls the decision here because we find that "no uncompensated marital efforts o[r] funds are attributable to the increase in value of the corporation's stock." *Hoffmann*, 676 S.W.2d at 825. The court lacked an evidentiary basis to award the lump sum maintenance in lieu of the division of marital property because the respondent failed to prove that the increased value fell within the parameters of *Meservey* and *Heilman*.

■ The appellant next complains that the trial court had no authority to order the business to be evaluated by an independent party, in this case a CPA appointed by the court, because the business was nonmarital property. Appellant cites us to *Penn v. Penn*, 655 S.W.2d 631 (Mo.App.1983), which does not stand for the point of law appellant advances. *Penn* stated that the court cannot order the distribution of property of the corporation, which is not a party to the litigation and not otherwise subject to the jurisdiction of the court. *Id.* at 632. Even when the appellant is owner of all shares of the corporation, he does not hold legal title to the corporation's property. *Id.*

Section 452.330.1(3) requires the court to consider all relevant factors in determining the division of marital property, including "the value of the nonmarital property set apart to each spouse." The trial court ordered the evaluation of the business. However, the corporate attorney refused to let the accountant view the documents necessary to evaluate the business. The matter was then dropped. It is not altogether clear, but our review of the record shows that there was no attempt by the respondent to enforce the court order.

The corporate attorney testified in court, but no attempt was made at that time to determine the value of the stock. There was evidence of corporate income tax returns showing gross receipts of $610,682 for 1992, and gross receipts of $690,466.48 for 1993.[3] The testimony showed that the business suffered losses of $12,803.17 in 1992, and almost $26,000 in 1993. Further, there were some exhibits, which revealed a CPA's evaluation for the six month period ending June 30, 1989. There was also testimony that the average cost of a funeral was $3500, and that the business averaged 30 to 35 funerals a month. However, this evidence was insufficient to establish the value of the corporate stock and the case must be remanded in order to determine the value of the stock. The trial court must have the authority to evaluate the Watkins' business in order to determine the value of the shares of stock owned by the appellant.[4] *Johnson v. Johnson*, 839 S.W.2d 714, 719–20 (Mo.App.1992); *Ker v. Ker*, 776 S.W.2d 873, 877 (Mo.App. 1989).

■ In his final point, the appellant complains that the award of child support in the amount of $475 per month, per child was an abuse of discretion, against the weight of the evidence, and erroneously applied the law. The respondent complains that the appellant's point failed to specify "wherein and why" the trial court erred. We agree. The appellant has stated mere abstract statements of the law and has not stated "wherein and why" the trial court abused its discretion, was against the weight of the evidence, or erroneously applied the law. *Best v. Culhane*, 677 S.W.2d 390, 394 (Mo.App.1984). The deficiency is not saved by the argument portion of the appellant's brief, except we observe that the appellant stated in his brief that "the amount of $475 was truly the maximum appellant could pay and still be able to meet his minimum needs." The point is dismissed because it fails to comply with Rule 84.04.

---

3. The trial was conducted in January 1995.

4. The original order required the business to pay the cost of the CPA's services. The judgment entry directed appellant to pay these costs. The

trial court should set aside the first order because there was no basis to require the business, a nonparty, to pay for the CPA's services.

The lack of an evaluation of the funeral home business and the trial court's determination that the increase in appellant's ownership interest was a purchase and, therefore, was marital property, permeates the entire division of property, including the court's award of maintenance and its holding that the farm was a "personal asset."[5]

The judgment of the trial court is affirmed in all respects except the division of the property, which is reversed and remanded for a new trial consistent with this opinion.

FENNER, C.J., and ELLIS, J., concur.

---

5. The testimony shows that the farm was purchased and acquired by the business. The warranty deed showed that it was titled in the name of Watkins Brothers Memorial Chapel, Inc. There was no evidence, direct or by inference, that indicated that the farm was a personal asset of the appellant.