James Lee OTTMANN, Respondent,

v.

Jerilyn OTTMANN, Appellant.

No. WD 44702.

Missouri Court of Appeals,
Western District.

April 14, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
June 2, 1992.

Dennis James C. Owens, Kansas City, for appellant.

Roger M. Prokes, Strong, Strong & Prokes, Maryville, for respondent.

Before FENNER, P.J., and ULRICH and SPINDEN, JJ.

ULRICH, Judge.

Jerilyn Ottmann appeals from the judgment dissolving her marriage with James Ottmann. Mrs. Ottmann raises two issues for appeal. She claims that (I) the trial court erred in its property distribution

award; and (II) the trial court erred in denying her an award for maintenance. The trial court's judgment is affirmed.

The record establishes the following facts. Mr. and Mrs. Ottmann were married on January 5, 1969. They reared three children during their marriage. The children were ages twenty-two, twenty, and seventeen when their parents' marriage was terminated. During the late 1970's and early 1980's, Mr. and Mrs. Ottmann conducted a successful business. However, hard times struck and reduced the family's wealth. In 1980, Mr. Ottmann considered the Ottmanns' net worth to be approximately $800,000. By 1987, the Ottmanns had a negative net financial value.

Financial stress resulted in further problems for Mr. Ottmann. He did not pay required social security taxes for his employees which resulted in a federal tax lien being levied against him. Unpaid loans resulted in judgments against Mr. Ottmann. Insufficient funds checks written by Mr. Ottmann resulted in a misdemeanor conviction, and Mr. Ottmann's real estate license was suspended. Additionally, Mrs. Ottmann was compelled to close a real estate office that she opened in Maryville, Missouri, after three months of operation. To save the Ottmann family's land and to help the Ottmanns avoid bankruptcy, Mr. Ottmann's father provided financial assistance to the Ottmanns.

The difficulties experienced during the marriage were not limited to business endeavors. The parties ceased living as husband and wife in June of 1984 but continued living in the marital home with their children until July of 1985. In late 1984, Mr. Ottmann began an extramarital affair which resulted in the birth of his child. Mr. Ottmann moved from the marital home in July of 1985. In late 1986, Mrs. Ottmann left the marital home and her children and acquired an apartment in Omaha, Nebraska. Mrs. Ottmann arranged for a baby sitter to come to the house and watch the Ottmann's three children. On December 18, 1986, shortly after Mrs. Ottmann left the family home, Mr. Ottmann moved back into the home and cared for the children.

After receiving substantial evidence, the trial court on March 19, 1991, entered its findings of fact, conclusions of law, and dissolution decree. The court found Mr. Ottmann guilty of marital misconduct in fathering his child with another woman during the marriage. The court also found Mrs. Ottmann guilty of marital misconduct in leaving the marital home and her children in December of 1985 to move to Omaha, Nebraska. The court awarded Mr. Ottmann sole custody of the minor child, allowing Mrs. Ottmann reasonable visitation rights. The court did not order Mrs. Ottmann to pay child support.

The trial court divided the marital property between Mr. and Mrs. Ottmann. Mr. Ottmann was awarded the marital home because he had custody of the minor child. The home, however, had zero equity because of the debt securing it, which Mr. Ottmann acquired along with the marital home. Mr. Ottmann was also awarded approximately $106,035 in marital assets; however, Mr. Ottmann was also burdened with approximately $203,000 in debts unrelated to the marital home. This assignment of debt resulted in allocation of a negative net value of $97,000 to Mr. Ottmann. Mrs. Ottmann was awarded approximately $6,000 in marital assets. However, she was apportioned only $500 of the marital debt, resulting in a positive net value of $5,500.

Mr. Ottmann was also awarded as nonmarital property two pieces of real estate that he had inherited prior to his marriage. The court recognized that Mr. Ottmann has a future interest in this real estate because his father, Raymond, holds a life estate in the property. Thus, the trial court did not assess any value to this nonmarital property because James "has no current interest in the non-marital real estate nor has he received income nor is he entitled to income from the same."

The court denied granting maintenance to Mrs. Ottmann, finding "that neither party is unable to support himself through appropriate employment as is demonstrat-

ed by [Mrs. Ottmann's] earnings in the Omaha, Nebraska, area during separation and [Mr. Ottmann's] agricultural employment." The court further found "that neither party has the ability or resources to support themselves or the other in the standard of living established during the time of the marriage." Finally, the court ordered each party to pay his own attorney's fees. This appeal followed.

 The trial court's judgment will be affirmed unless no substantial evidence supports the judgment, unless the decision is against the weight of the evidence, or unless the trial court erroneously declares or applies the law. *Tucker v. Tucker*, 778 S.W.2d 309, 311 (Mo.App.1989). Additionally, when determining the sufficiency of the evidence, this court views the evidence and all reasonable inferences from such evidence in the light most favorable to the dissolution decree. *Id.* Furthermore, this court shall disregard any evidence contrary to the decree. *Id.*

## I. *Division of Marital Property*

 Mrs. Ottmann argues for her first point on appeal that the trial court erred in the division of marital property and debts. Mrs. Ottmann contends that the trial court failed to fully consider Mr. Ottmann's marital misconduct when dividing the assets which, Mrs. Ottmann argues, warrants more favorable property division for her than the court awarded. Additionally, Mrs. Ottmann maintains that the trial court should have considered, pursuant to § 452.-330.1(3), RSMo Supp.1991,[1] Mr. Ottmann's nonmarital real estate assets when apportioning the marital assets, which would have required the trial court to apportion more marital property to her than the court did.

The record reveals sufficient evidence to support the division of marital property.

Mrs. Ottmann was awarded $5,459 in net assets, while Mr. Ottmann was burdened with $97,074 in debt. Awarding the family home to Mr. Ottmann did not produce an asset to him since it is saddled with secured debt and has no equity. The trial judge properly reviewed the conduct of both parties, including Mr. Ottmann's infidelity and Mrs. Ottmann's marital misconduct, which impacts upon the property distribution award. § 452.330.1(4). Finally, the trial judge properly assessed no value to Mr. Ottmann's nonmarital assets because Mr. Ottmann's father has a present life estate interest in the property and Mr. Ottmann does not have present pecuniary interest in the real estate. Therefore, this court cannot find that the property distribution is against the weight of the evidence. *Tucker*, 778 S.W.2d at 311. Appellant's point I is denied.

## II. *Denial of Maintenance*

 Mrs. Ottmann argues for her second point that the trial court erred in denying maintenance to her because evidence in the record requires that maintenance be awarded. Mrs. Ottmann contends the trial judge's determination that each party is able to support himself through appropriate employment is erroneous because, she says, she is not currently capable of obtaining appropriate employment.

Section 452.335.1, RSMo Supp.1991, prescribes that a maintenance award may be granted "only if ... the spouse seeking maintenance: (1) [l]acks sufficient property ... to provide for his reasonable needs; and (2) [i]s unable to support himself through appropriate employment...." Section 452.335 further designates factors which the court should consider before awarding maintenance. § 452.335.2.[2] The court, in reviewing the evidence, found that

---

1. 1) Section 452.330.1 states:

 In a proceeding for dissolution of the marriage ... the court shall set apart to each spouse his nonmarital property and shall divide the marital property in such proportions as the court deems just after considering all relevant factors including:

 ....

(3) The value of the nonmarital property set aside to each spouse....

2. Section 452.335.2 prescribes that these factors include:

 (1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the

[A]lthough the parties showed a substantial net worth on their financial statements of the late 70's and early 80's, that their net worth decreased steadily from that time, particularly caused by changes in the cattle market, deterioration in the value of farm land, an ill-conceived venture into a real estate franchise, and excessive borrowing. The Court further finds that neither party is unable to support himself through appropriate employment as is demonstrated by the Respondent's [Mrs. Ottmann's] earnings in the Omaha, Nebraska area during separation, and the Petitioner's [Mr. Ottmann's] agricultural employment. The Court further finds that neither party has the ability or resources to support themselves or the other in the standard of living established during the time of the marriage. As a result of this finding, the court ordered that no maintenance shall be entered.

Mrs. Ottmann contends that the trial judge improperly determined that she is able to support herself through appropriate employment. Although she was able to earn approximately $1,500 per month while she was employed in Omaha doing home financing, Mrs. Ottmann maintains that she is currently unemployed, incapable of obtaining appropriate employment, and is presently enrolled in college courses in anticipation of obtaining a nursing degree. Additionally, Mrs. Ottmann contends that the trial court failed to properly consider the factors enumerated in § 452.335.2 when determining whether maintenance was appropriate.

Section 452.335 provides wide discretion to the trial court in determining if spousal maintenance is appropriate. *Doerflinger v. Doerflinger*, 646 S.W.2d 798, 800 (Mo. banc 1983). The trial court must determine what, if any, maintenance should be awarded after giving due consideration to the factors listed in § 452.335.2. *Id.* "Justice does not require provision of support to a spouse who is or may be prepared to become self-supporting." *Id.* "Moreover, where the trial court determines that the spouse seeking maintenance is capable of self support a denial of maintenance is not error." *McDonough v. McDonough*, 762 S.W.2d 827, 830 (Mo.App.1988).

The record establishes that Mrs. Ottmann has the capacity to earn $1,500 per month, evinced by her employment with a mortgage placement company in Omaha, Nebraska. Additionally, Mrs. Ottmann was a real estate broker, licensed to sell real estate, and was a member of the Missouri Board of Realtors and the Missouri Association of Realtors. Mrs. Ottmann has also attended Northwest Missouri State University and Tarkio College during the marriage, accumulating more than fifty credit hours. She is in good physical and emotional condition. Finally, Mrs. Ottmann has been supporting herself since December 1985, when she left the marital home. Therefore, since the record establishes that Mrs. Ottmann is capable of supporting herself, the trial court's denial of maintenance is not error. *Id.* Appellant's point II is denied. The judgment of the trial court is affirmed.

All concur.

extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors.