**Patty C. KNAPP, Respondent,**

v.

**Donald Lee KNAPP, Sr., Appellant.**

**No. WD 47739.**

Missouri Court of Appeals,
Western District.

March 15, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 3, 1994.

Stanley I. Dale, St. Joseph, for appellant.

Ralph W. Hicks, St. Joseph, for respondent.

Before ULRICH, P.J., and BRECKENRIDGE and SPINDEN, JJ.

SPINDEN, Judge.

Donald Lee Knapp, Sr., appeals the trial court's decree dissolving his marriage to Patty C. Knapp. He alleges that the court erred in dividing marital property and in designating debts and property as marital and nonmarital. We disagree and affirm the trial court's judgment.

The Knapps married on November 23, 1978, and separated on March 25, 1992. No children were born to the marriage. Donald Knapp was co-owner of a general construction business, Sun General, Inc., until 1982 when he sold out to his brother and became a self-employed carpenter. Patty Knapp was a public school teacher and served in the Air National Guard.

Before 1983, the Knapps resided at 204 South 31st Street in St. Joseph. Patty Knapp purchased the house in 1977 for $27,-000 before marrying Donald Knapp. She was living there with her two children from a previous marriage when she married Donald Knapp. The property title listed Patty Knapp as the sole owner, and she did not change the title after marrying Donald Knapp. The property's mortgage balance was $20,000 when the couple divorced. Although the Knapps moved to another house in 1983, Patty Knapp retained ownership of the house.

In 1983, the parties purchased land at 2913 Cronkite, and the property title listed Donald and Patty Knapp as owners. Donald Knapp and his son built a house on the land. The land had originally been five separate lots. The Knapps devoted four of the lots to the house. The house was the family residence when the couple divorced. Donald Knapp built a workshop and a tool shed on the remaining fifth lot behind the house. The land devoted to the workshop and tool shed was landlocked without access to a public street. Donald Knapp used these buildings in his carpentry business.

In 1988, the Knapps refinanced their mortgage on the house at 2913 Cronkite. The mortgage balance was $45,000, and the Knapps borrowed $28,000 to pay business debts incurred by Donald Knapp. The new mortgage totaled approximately $72,000.

The mortgage balance when the couple divorced was approximately $69,000. Patty Knapp testified that the value of the property, including the workshop and tool shed, was $120,000 to $125,000. Donald Knapp valued the property at $130,000.

In its decree dissolving the Knapp's marriage, the trial court found:

> The business interests of [Donald Knapp] have caused a substantial decrease in the amount of marital property subject to division by the Court; [Donald Knapp] squandered in excess of $7000.00 of [Patty Knapp's] earnings while she was in Saudi Arabia involved in the Gulf War; [Donald Knapp] has conveyed property in which [Patty Knapp] had a marital interest in excess of $42,000.00 to third parties without adequate consideration and without the consent of [Patty Knapp]; and further [Patty Knapp] has made significant contributions to the marital estate from her earnings and accumulation of assets and reduction of debts all such that a disproportionate division of the marital assets of the parties is justified.

The trial court awarded Patty Knapp $122,470.28 in marital assets and designated $130,966.66 of the couple's debt to her. It awarded $70,930.62 in marital assets to Donald Knapp and designated $57,587.33 of the couple's debt to him.

## I.

Donald Knapp contends the trial court erred in making a disproportionate division of marital property in favor of Patty Knapp. He argues that the trial court's findings were not supported by substantial evidence, or at least were against the greater weight of the evidence. He is correct, in part, but we fail to understand how he has been prejudiced. He also contends that the trial court's divi-

sion of marital property was not justified under § 452.330, RSMo Cum.Supp.1993.[1] We disagree.

## A.

■ The trial court awarded Patty Knapp $51,539.66 more assets than it awarded to Donald Knapp, but, on the liability side, it designated $73,379.33 more debt to Patty Knapp than to Donald Knapp. The net effect favors Donald Knapp. Assuming that the trial court did give a disproportionate share of the marital property to Patty Knapp as it suggests that it did, we fail to discern how Donald Knapp was prejudiced.

"Debts of the spouses are not marital property, but the existence of the debts and who has the responsibility for paying them are factors the trial court should consider in a fair division of the marital property." *Zimmer v. Zimmer,* 862 S.W.2d 355, 359 (Mo.App.1993). Had the trial court divided the assets and debts evenly, Donald Knapp would have enjoyed a positive cash position of only $2423.45. As it stands, he has a positive cash position of $13,343.29.[2]

Although we agree with Donald Knapp that the record does not support the trial court's conclusion that he squandered more than $7000 of the funds Patty Knapp earned fighting in the Gulf War or that she had a marital interest of more than $42,000 in property transferred by him without Patty Knapp's consent, we fail to descry prejudice to Donald Knapp for the same reason. The net effect of the trial court's division of assets and liability was favorable to Donald Knapp given the court's designation of $73,379.33 more debt to Patty Knapp than designated to Donald Knapp.

1. Donald Knapp argues that the trial court did not consider his economic circumstances in dividing the marital property, and, therefore, the division unfairly impoverishes him. We deal with this contention in section IV, infra.

2. He complains that the assets awarded to him included "an uncollectible judgment and an account receivable ... of extremely dubious value." Although he reported to the court that he

had "never been able to collect" the $3400 judgment, Patty Knapp thought well enough of the judgment's value to ask the court to award its ownership to her. Donald Knapp said that the account receivable "possibly" may never be paid, but he added, "I would like to be paid when the estate [for whom the work was done] is settled." He acknowledged that he prepared invoices to the estate for his work performed at the instruction of the estate's attorney.

### B.

 Moreover, § 452.330.1(2) provides that the court may consider the contributions of each spouse to the acquisition of marital property. *See In re Marriage of Gourley*, 811 S.W.2d 13, 21 (Mo.App.1991). Although the court certainly may consider the nonmarital contributions made by a spouse, the source of the contributions does not have to stem solely from nonmarital assets or funds. The evidence supports a finding that Patty Knapp contributed significantly more to the acquisition of marital assets and to the reduction of debts than Donald Knapp did, and it was proper for the court to consider their relative contributions in apportioning marital assets. With regard to the reduction of debts, the record shows that Patty Knapp made all of the mortgage payments on the marital residence. Included in that mortgage is $28,000 of Donald Knapp's business debts and judgments. She also is responsible for the repayment of a $20,000 business debt incurred by her husband, and she must pay the Internal Revenue Service for delinquent taxes related to Donald Knapp's business dealings. In light of this, we fail to understand how the trial court abused its discretion merely by awarding a larger share of the marital estate to Patty Knapp.

Donald Knapp argues that the trial court placed undue emphasis on the relative earnings of each spouse during the marriage and the wife's larger contribution of marital income. In its decree, the trial court said that it had considered "all relevant factors, including those set forth in section 452.330.1." The contributions of each spouse is one of the factors to be considered by the court. We presume the court's decree to correctly divide marital property. *Klein v. Klein*, 837 S.W.2d 567, 569 (Mo.App.1992). We will not interfere with the trial court's findings without a clear showing that the property division

so favors one spouse as to amount to an abuse of discretion. *Gremaud v. Gremaud*, 860 S.W.2d 354, 356 (Mo.App.1993). That one party receives a larger share of marital assets is not a *per se* abuse of discretion. *Id.* Substantial evidence supports the trial court's findings.

### C.

 Donald Knapp also claims that the property division was unjust because the court did not adequately consider the nonmarital property set aside to each party. In the decree, the court awarded to him the Green Street property ($8,000), an interest in the estate of his sister ($25,204.62), and a judgment in the amount of $3,400 along with miscellaneous cars, motorcycles, tools, guns and furniture. Donald Knapp complains that his wife was allowed to keep her entire interest in her teacher's pension valued at approximately $61,000.[3] However, the record also indicates that Patty Knapp did not acquire social security benefits through her employment as a teacher while Donald Knapp did acquire social security benefits through his employment. In any event, the trial court is not required to make an equal division of property. *Duebelbeis v. Duebelbeis*, 735 S.W.2d 106, 107 (Mo.App.1987). In considering all of the evidence in the record as well as the relevant factors set forth in § 452.330, we conclude that the court did not abuse its discretion in apportioning the marital assets in favor of Patty Knapp.

### II.

Donald Knapp complains that the trial court erred in determining that the entire value of the property at 204 South 31st Street was Patty Knapp's nonmarital property. He argues that §§ 452.330.2(5) and 452.-330.3 [4] entitle him and the marital estate to a share in the property's value because marital

---

3. Under Missouri law, a public school teacher's pension benefits are considered separate property. *Kieninger v. Catlett*, 854 S.W.2d 59 (Mo.App. 1993); Section 169.572, RSMo Cum.Supp.1993.

4. Section 452.330.2(5) provides that "marital property" shall not include "[t]he increase in value of property acquired prior to the marriage ... unless marital assets including labor, have contributed to such increases and then only to

the extent of such contributions." Section 452.-330.3 says, "All property acquired by either spouse subsequent to the marriage and prior to a decree of legal separation or dissolution of marriage is presumed to be marital property regardless of whether title is held individually or by the spouses in some form of coownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property."

funds were used to acquire it, marital funds were used to make mortgage payments during the marriage, and his labor increased its value. We disagree.

The trial court has much discretion in determining such matters, and we will not disturb its decision without a clear showing that it abused its discretion. *Klein*, 837 S.W.2d at 569. We presume the trial court's order dividing marital property is correct, and the party challenging it has the burden of overcoming this presumption. *Id.*

Donald Knapp claims that he is entitled to a share of the property under the "source of funds" rule because marital funds were used to acquire it and because the value of the property increased as a result of his labor. Under the rule, property is classified as marital or nonmarital according to the source of the funds which financed the purchase. If the property was acquired with marital funds or efforts, it should be classified as marital property. *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 824–25 (Mo. banc 1984).

For a spouse to be entitled to a proportionate share of the increase in the other spouse's separate property, the marital labor, efforts or services must be substantiated. *Meservey v. Meservey*, 841 S.W.2d 240, 245 (Mo.App.1992). Entitlement to a proportionate share of property based on increased value requires proof of (a) a contribution of substantial services; (b) a direct correlation between those services and the increase in value; (c) the amount of increase in value; (d) performance of services during marriage; and (e) the value of the services, lack of compensation, or inadequate compensation. *Id.* at 245–46.

Donald Knapp claims that he increased the property's value by remodeling it. He testified that he added a deck to the house with materials he paid for; that he "finished out" the basement; and that he gutted the house's old kitchen and put in a new one with a new stove and trash compactor. We are unable to conclude whether Donald Knapp's remodeling work was sufficient to establish a marital interest. Patty Knapp presented the only evidence pertaining to the property's value. She testified that she purchased the property before marrying Donald Knapp for approximately $27,000 and that it still was worth $27,000 to $28,000 when they divorced. The record supports a conclusion that the property value did not increase, or increased insignificantly. When the parties present conflicting testimony, this court is free to disregard any evidence contrary to the decree. *Ottmann v. Ottmann*, 829 S.W.2d 644, 646 (Mo.App. 1992).

### III.

Donald Knapp contends the trial court erred in characterizing the Green Street lot as marital property. He claims that he bought the lot before marrying Patty Knapp, and he did not use marital funds. He said that Patty Knapp did not contribute anything which increased the property's value.

Patty Knapp contradicted him. She testified that the couple bought the lot in 1984 to build a duplex and that they had received a quit claim deed on the property. Donald Knapp asserted that the quit claim deed replaced a "lost or destroyed" deed. Again, we disregard evidence contrary to the decree. *Ottmann*, 829 S.W.2d at 646. Obviously, the trial court found Patty Knapps testimony to be more credible. We must defer to the trial court's assessment in determining the credibility of witnesses. *Schneider v. Schneider*, 824 S.W.2d 942, 947 (Mo. App.1992). The court did not abuse its discretion by determining that the Green Street lot was part of the marital estate.

### IV.

Donald Knapp contends that the trial court abused its discretion in awarding all of the Cronkite property to Patty Knapp. He complains that the trial court should not have awarded his workshop and tool shed to Patty Knapp because it was (1) unjust and unconscionable and contrary to the wishes of the parties; (2) it deprived him of his means of employment; and (3) the court failed to adequately consider the relative economic circumstances of the parties. He asserts that

the award will "further impoverish" him and "enrich his financially advantaged wife."

He claims that he will no longer be able to carry on his business as a carpenter without owning and having access to the workshop and tool shed. The record shows, however, that he was self-employed in the construction business the entire time he was married to Patty Knapp and for some time before the couple acquired the property. He apparently was able to work in his carpentry and construction businesses for the first five years of the marriage without the workshop and tool shed.

■ He suggests that the trial court should have awarded the workshop and tool shed to him because Patty Knapp agreed that he should have it.[5] Although the trial court may allow parties to submit a property division proposal, it is under no obligation to follow all of the parties' wishes.

■ He complains that the trial court failed to consider adequately the parties' relative economic circumstances. In its decree, the court said that it had considered all relevant factors including those set forth in § 452.330. One of the factors for consideration mandated by § 452.330.1(1) is each spouse's economic circumstances. Although the record indicates that Patty Knapp had a higher income than Donald Knapp when they divorced, Donald Knapp had been employed throughout the marriage and had the capacity to make a reasonable income. We find no evidence showing that he will be unable to work as a carpenter and become impoverished because of the court's award. The trial court did not abuse its discretion in awarding all of the Cronkite property to Patty Knapp.

## V.

■ Donald Knapp finally contends that the trial court erred in adopting, without modification, the decree proposed by Patty Knapp's attorney and in not issuing its own findings.[6] The only "proposed" decree in the record is one submitted by Donald Knapp's attorney. The only other decree in the record is the one issued by the court and signed by the judge. We have no way of comparing the court's decree with the one proposed by Patty Knapp's attorney. Nonetheless, the record indicates that the trial court did not adopt verbatim Patty Knapp's proposed decree but ordered modifications.[7] Moreover, adoption of a party's proposed decree is not error *per se*. "[I]n reviewing such a decree, we presume that the trial court properly applied the law unless that presumption is contradicted by the record." *Ederle v. Ederle*, 741 S.W.2d 883, 884–85 (Mo.App.1987).

For these reasons, we affirm the trial court's judgment. What error occurred in the trial court's division of property did not prejudice Donald Knapp.

All concur.

5. Asked at hearing whether she had an opinion about who should own the workshop and tool shed, Patty Knapp answered, "He can have it if he wants it."

6. In making his argument, he contends five errors in the decree. He does not raise these errors as independent bases for reversing the trial court's judgment, but as examples why we should conclude that the trial court erred in adopting Patty Knapp's proposed decree. As we explain, *infra*, we conclude that his premise is incorrect; the trial court did not adopt Patty Knapp's proposed decree without modification.

7. On appeal, Patty Knapp contends that the trial court had communicated to her attorney, *ex parte*, that it wanted two modifications to her proposed decree. Donald Knapp responded by accusing the trial court of violating Rule 2, Canon 3.A(4), which says, "A judge should accord to every person who is legally interested in a proceeding and the person's lawyer full right to be heard according to law and, except as authorized by law, neither initiate nor consider ex parte or other communications concerning a pending or impending proceeding." We do not descry a violation in this case. So long as the trial judge has already made his or her decision, requesting assistance by one of the party's counsel in preparing the decree does not violate the canon. *Jake C. Byers, Inc. v. J.B.C. Invest.*, 834 S.W.2d 806, 821 (Mo.App.1992); *Lemon v. Lemon*, 819 S.W.2d 94, 95 (Mo.App.1991). We find nothing in the record indicating that the trial court did anything more than asking Patty Knapp to modify her decree to parallel the court's decision already independently made.