In re the **MARRIAGE OF Anneta I. PATROSKE and James E. Patroske.**

**Anneta I. PATROSKE, Petitioner–Appellant,**

v.

**James E. PATROSKE, Respondent–Respondent.**

**No. 18956.**

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 22, 1994.

Betty A. Pace, Springfield, for petitioner-appellant.

J.D. Baker, Baker & Dull, Osceola, for respondent-respondent.

GARRISON, Presiding Judge.

Anneta Patroske (Wife) appeals from a decree dissolving her three-year marriage to James Patroske (Husband).[1] Wife raises four points on this appeal which relate to the division of property, custody of their two-year-old daughter, and failure of the trial court to continue the proceedings to permit an investigation into allegations of Husband's sexual abuse of the minor child.

## FACTS

When the parties were married, they moved onto Husband's property in Osceola, Missouri, where he was conducting an automobile repair business through his wholly-owned corporation, Double Nickel Service, Inc. (the corporation). The real estate, consisting of a metal shop building with an attached apartment on two lots, was then and continued to be titled solely in Husband's name. During the marriage, the corporation paid for construction of an addition to the apartment (the house), built to expand the living quarters. Wife contends on this appeal that because both she and Husband worked on the project, part of the increased value of the real estate caused by construction of the house should constitute marital property.

During the marriage, the parties maintained a personal checking account in their joint names. Money deposited in that account included proceeds Husband received from the settlement of a workers' compensation claim as well as a personal injury claim which arose prior to the marriage. Money from that account was used to make a $3000 loan to the corporation which Wife contends should, contrary to the judgment, also be included as marital property.

A confrontation occurred when the parties separated in April 1992 which resulted in Husband kicking out a window in Wife's car and Wife threatening Husband with a gun. An adult abuse action was filed in St. Clair County which resulted in Husband being awarded custody of their child with Wife receiving visitation privileges. Husband also filed a dissolution of marriage action in which he alleged that he then had custody of the child. Thereafter, there was an apparent attempt at reconciliation, resulting in the

---

1. Wife was represented by a different attorney at trial than on this appeal.

signing, in September 1992, of a stipulation to dismiss the dissolution action. At or about the same time, Wife obtained physical custody of the child for a visitation. She filed the dismissal of the then pending dissolution a few days later, and on the same day filed the petition in the instant dissolution action, alleging that she then had custody of the child.

Trial commenced on Monday, March 22, 1993, and at the end of March 23 it was recessed until Friday, March 26. When the trial resumed, Wife presented evidence that the child, while staying with Wife's grandmother the evening of the first day of trial, had made statements indicating that she had been sexually abused by Husband the preceding weekend. Following trial that day, the case was recessed until June 7 and concluded on June 8, 1993. In the interim, an investigation was conducted by the Division of Family Services, including an interview of the child. Following considerable evidence concerning the alleged sexual abuse and the activities and conduct of each of the parties, the trial court awarded the care, custody and control of the child to Husband with specific visitation in favor of Wife. The trial court also distributed the marital and non-marital property as follows:

|                        | Husband   | Wife      |
| ---------------------- | --------- | --------- |
| Non-marital property:  | $46,113   | $ 5,606   |
| Marital property:      | $ 2,440   | $ 1,284   |
| Debts ordered paid:    | $   650   | $13,618   |

### STANDARD OF REVIEW

■ A judgment in a dissolution case must be affirmed if there is substantial evidence to support it, it is not against the weight of the evidence, and it neither erroneously declares or applies the law. Rule 73.01(c);[2] *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Schelsky v. Schelsky*, 796 S.W.2d 888, 891 (Mo.App.E.D.1990). All of the evidence and permissible inferences therefrom are viewed in the light most favorable to the trial court's decision, and all

contrary evidence and inferences are to be disregarded. *Sinclair v. Sinclair*, 837 S.W.2d 355, 357 (Mo.App.W.D.1992).

### POINT I

■ In Point I, Wife complains about the trial court's classification of some of the property as non-marital. First, she alleges that the trial court erred in not including, as marital property, part of the increased value of the real estate caused by construction of the house. She acknowledges that the real estate on which the residence is located was purchased prior to the marriage and was consistently maintained in Husband's name alone. She contends, however, that marital labor was expended in the construction of the house and that the increased value of the property caused by those services should have been classified as marital property.[3]

■ The trial court has considerable discretion in determining whether, as a result of marital services or labor, non-marital property has increased in value and whether the increase should be determined to be marital property. *Knapp v. Knapp*, 874 S.W.2d 520, 524 (Mo.App.W.D.1994). As a result, an appellate court will not disturb the trial court's decision on such matters without a clear showing of an abuse of discretion. *Id.* We are to presume the trial court's order is correct, and the party challenging it has the burden of overcoming that presumption. *Id.*

It was acknowledged by the Missouri Supreme Court in *Hoffmann v. Hoffmann*, 676 S.W.2d 817, 825 (Mo. banc 1984), that an increase in value of separate property can constitute marital property if marital labor contributed to the increase. After the *Hoffmann* case, § 452.330,[4] which concerns the division of marital property, was amended and now reads, in pertinent part:

2. For purposes of sections 452.300 to 452.415 only, "marital property" means all

---

2. Rule references are to Missouri Rules of Civil Procedure (1994) unless otherwise indicated.

3. Wife acknowledges, without contest, the trial court's ruling that the improvements made to the real estate during the marriage were paid for with Husband's non-marital funds received from the settlement of his workers' compensation and

personal injury claims and, unlike the $3000 loan discussed *infra*, does not claim an interest in the real estate as a result of those funds having first been deposited in a jointly-owned checking account.

4. All references to statutes are to RSMo Cum. Supp.1993 unless otherwise indicated.

property acquired by either spouse subsequent to the marriage except:

. . . .

(5) The increase in value of property acquired prior to the marriage or pursuant to subdivisions (1) to (4) of this subsection, unless marital assets including labor, have contributed to such increases and then only to the extent of such contributions.

It has been held that for a proportionate share of the increase in value of a spouse's separate property to be considered marital property as a result of marital labor, effort or services, there must be "comprehensive substantiation" and proof of (1) a contribution of substantial services; (2) a direct correlation between those services and the increase in value; (3) the amount of the increase in value; (4) performance of the services during the marriage; and (5) the value of the services, the lack of compensation, or inadequate compensation. *Meservey v. Meservey,* 841 S.W.2d 240, 245–246 (Mo.App. W.D.1992). *See also Knapp v. Knapp,* 874 S.W.2d at 524.

Some cases seem to indicate that the issue is whether the labor of the spouse who is seeking to establish the marital interest in otherwise separate, non-marital property caused an increase in value as opposed to the labor of the owner-spouse. *See Schneider v. Schneider,* 824 S.W.2d 942, 946 (Mo.App.E.D. 1992). Section 452.330.2(5) and other cases do not make such a distinction, however. *See Meservey v. Meservey,* 841 S.W.2d at 246.

■ In the instant case, there is no dispute that Husband essentially "closed down" the automobile repair business in the summer of 1991 for six weeks to two months while working on the house. There was also evidence that Wife provided some labor in connection with the construction of the house, although there is conflicting evidence concerning the amount. There was, however, no evidence concerning the value of the labor of either Husband or Wife or the proportion of the house's value attributable to those services. The law refuses to recognize services as substantial marital effort sufficient to create a marital interest in property

in the absence of proof of the value of the services and the connection between their performance and any increased value of the property. *Meservey v. Meservey,* 841 S.W.2d at 246.

■ In addition, in Missouri the general rule is that performance of usual spousal duties is not the type of substantial contribution contemplated as the basis for establishing that an increase in the value of otherwise separate property constitutes marital property. *See Deffenbaugh v. Deffenbaugh,* 877 S.W.2d 186, 188 (Mo.App.E.D.1994); and *Meservey v. Meservey,* 841 S.W.2d at 245–246. Because of the nebulous nature of the evidence concerning the extent and nature of Wife's work on the project, the trial court could have found that the services performed by Wife were not so substantial as to take them outside the category of "usual spousal duties." In the instant case, as the issue is presented, we are unable to conclude from the record before us that the trial court erred in finding that all of the real estate and improvements were Husband's non-marital property. This allegation of error is, therefore, denied.

■ Wife also contends in her first point that the trial court erred in not classifying a $3000 loan to the corporation as marital property. The money used to make the loan came from the joint personal checking account. On August 15, 1991, Husband deposited in the account approximately $26,000 from the settlement of his personal injury claim which arose prior to the marriage, and on the same day a check in the amount of $3000 was written to the corporation for, as described by Husband, a loan. Wife contends that the $3000 loan is marital property. We agree.

■ Property acquired after the marriage which is placed in joint names is presumed to be marital property even if one spouse furnished all the consideration. *Spidle v. Spidle,* 853 S.W.2d 311, 314 (Mo.App. S.D.1993); *Doll v. Doll,* 819 S.W.2d 739, 741 (Mo.App.E.D.1991). A party who claims that property, presumed to be marital, is in fact separate property assumes the burden of

rebutting the presumption with clear and convincing evidence that the transfer was not intended as a gift. *Spidle v. Spidle*, 853 S.W.2d at 314; *Drikow v. Drikow*, 803 S.W.2d 122, 126 (Mo.App.E.D.1990). In the instant case, there was no evidence indicating that placement of the settlement funds in the jointly-owned checking account was intended as anything other than a gift, with the resulting consequence of becoming marital property. In the absence of such evidence, we hold that the trial court erred in not classifying and dividing this loan as marital property.

## POINT II

In her second point, Wife contends that the trial court abused its discretion in that the division of marital property was unduly weighted in favor of Husband, considering the relative economic circumstances of the parties, her contribution to the acquisition and improvement of the marital property, and the value of non-marital property set aside to Husband.

Section 452.330.1 contains the criteria for division of property in a dissolution action. It first requires the trial court to set aside to each party his or her non-marital property. It then provides that the trial court shall divide the marital property in such proportions as the court deems just after considering all relevant factors, including five which are specifically enumerated as follows:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;

(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;

(3) The value of the nonmarital property set apart to each spouse;

(4) The conduct of the parties during the marriage; and

(5) Custodial arrangements for minor children.

Division of marital property is left to the sound discretion of the trial court and that decision will be upheld unless an abuse of discretion is shown. *Colabianchi v. Colabianchi*, 646 S.W.2d 61, 64 (Mo. banc 1983); *In re Marriage of V_A_E_*, 873 S.W.2d 262, 268 (Mo.App.S.D.1994); *In re Marriage of Hash*, 838 S.W.2d 455, 459 (Mo. App.S.D.1992). The factors specifically enumerated in the statute are not exclusive and the trial court has great flexibility and far-reaching power in dividing the marital property so as to accommodate the needs of the parties. *In re Marriage of Torix*, 863 S.W.2d 935, 938 (Mo.App.S.D.1993). What is required is a fair and equitable division of the marital property, not necessarily an equal division, and an appellate court will interfere only if the division is so heavily and unduly weighted in favor of one party as to amount to an abuse of discretion. *In re Marriage of Hash*, 838 S.W.2d at 459. The judgment dividing marital property is presumed to be correct, and on appeal the party challenging that division has the burden of overcoming the presumption. *In re Marriage of Torix*, 863 S.W.2d at 939.

In the instant case, the court found that the items constituting marital property totaled $3724, and awarded $1284 of that amount to Wife and $2440 to Husband. Wife argues, however, that she was assessed $13,618.74 in marital debts while Husband was assessed debts totaling only $650. As a result, her net distribution of marital property was a negative $12,334.74 while Husband's net distribution was a positive $1790. In this regard, we note, however, that Husband was ordered to also satisfy a guardian ad litem's fee of $2240.

Although trial courts are not obligated to allocate marital debts, it is a commendable practice. *Zimmer v. Zimmer*, 862 S.W.2d 355, 359 (Mo.App.S.D.1993). If the trial court does divide debts in the dissolution proceeding, it is accorded considerable discretion in doing so. *Klein v. Klein*, 837 S.W.2d 567, 569 (Mo.App.W.D.1992). The existence of debts and the identity of the party responsible for paying them are factors the trial court should consider in a fair divi-

sion of marital property. *Zimmer v. Zimmer*, 862 S.W.2d at 359.

In the instant case, the $13,618.74 which Wife was ordered to pay included $4076 owed to attorneys who represented her in the prior adult abuse and dissolution proceedings. Also included was $8128.81 expended by Wife's grandmother in her behalf which incorporated an additional $1075 paid to attorneys for the prior proceedings and $4800 paid to Wife's trial attorney for services rendered in the instant case. Wife admitted that the initial dissolution case was dismissed after she induced Husband to believe she was attempting a reconciliation and that she immediately filed the instant case in order to obtain custody of their child during the pendency of the proceedings. It is apparent that some duplication of services and expense occurred as a result of the original dissolution case being dismissed and replaced with the instant case and a new attorney. We also note that the court's order that Wife pay these expenses is consistent with that part of the judgment in the instant case, from which Wife does not appeal, which directed each party to pay their own attorneys' fees. Additionally, there was no evidence of any obligation by Wife to repay her grandmother. Under these circumstances, we do not find that the trial court abused its discretion in apportioning the debts as it did.

In considering other factors pertinent to the division of marital property, we note that the economic circumstances of the parties at the time of the decree were uneven. Wife had not been employed outside the family business during the marriage and claimed to have a debilitating back condition which precipitated the use of much of the medication referred to in the evidence.

Husband, on the other hand, received all marital interest in the corporation through which he ran the established garage business he had conducted for several years. The trial court, although finding that Wife had a marital interest in the corporation because of the purchase of tools and equipment during the marriage, found that its "book value" was minus $6200 (because of loans made from the personal checking account) and that the "fair market value" of the parties' interest in it was negligible. All of the interest in the corporation was awarded to Husband at a valuation of zero.[5] This business provided him an income of approximately $600 per month. Although Husband testified that the business lost $2000 in 1990, $9000 in 1991, and $6000 in 1992, as we understand the evidence, those losses included the cost of improvements such as construction of the house.

We recognize that the record contained evidence of a negative nature concerning the conduct of Wife during the marriage, including abuse of prescription medications, illegal drug use, and her action in obtaining the dismissal of the first dissolution proceeding and immediately refiling the instant case. There was other evidence, however, that Wife did render assistance in connection with the garage business and also provided some work in connection with the construction of the house.

Negative conduct was not restricted solely to Wife. There was evidence that Husband kicked out the window of Wife's car, physically assaulted her, and threatened her. Additionally, Wife testified that when Husband was bringing her and their newborn baby home from the hospital following her cesarian delivery, he stopped at a pizza parlor and went in to eat a pizza, leaving her and the baby in the car while he did so.

The fact that the $3000 loan constitutes marital property which was not divided by the trial court requires that the case be remanded. In doing so, we are empowered by Rule 84.14 to enter the judgment the trial court should have entered in order to finally dispose of the case. *Wallace v. Wallace*, 839 S.W.2d 354, 359 (Mo.App.W.D. 1992). In this regard, we note that while the evidence was uncontradicted that the $3000

---

5. Wife does not, however, on this appeal claim that there was any error in the valuation of the corporation, that any of the other loans to the corporation from the personal funds constituted marital property subject to division, or that there was error in designating other assets as nonmarital property except a portion of the value of the real estate because of labor expended constructing the house referred to in Point I.

loan to the corporation came from the joint checking account and is presumed to be marital property, there was no evidence about the terms of that loan or whether it was the subject of a written promissory note. The court need not actually divide the property between the parties but may award the property to one spouse and order that spouse to pay the other a sum in cash, especially where a division in kind would not bring about a fair and equitable result. *Claunch v. Claunch*, 525 S.W.2d 788, 791 (Mo.App.S.D.1975). In the instant case, considering the factors enumerated in § 452.330, the existence of the $3000 loan as marital property, and the lack of evidence concerning its terms, we believe a more equitable division of the marital property would be achieved by awarding the $3000 to Husband and a judgment in favor of Wife and against Husband in the amount of $3000. Accordingly, the cause will be remanded to the trial court for entry of an amended judgment to so provide.

### POINT III

In her third point, Wife alleges that the trial court abused its discretion in awarding custody of their minor child to Husband on the theory that it was against the weight of the evidence.

Section 452.375.2 directs the trial court to determine custody based on the best interests of the child and, in doing so, to consider "all relevant factors," including eight which are specifically enumerated. Those which are particularly relevant under the facts of this case are:

(3) The interaction and interrelationship of the child with his parents ...;

. . . .

(5) The mental and physical health of all individuals involved, including any history of abuse of any individuals involved. If the court finds that a pattern of domestic violence has occurred, and, if the court also finds that awarding custody to the abusive parent is in the best interest of the child, then the court shall enter written findings of fact and conclusions of law. Custody and visitation rights shall be ordered in a manner that best protects the child and the parent or other family or household member who is the victim of domestic violence from any further harm;

(6) The needs of the child for a continuing relationship with both parents and the ability and willingness of parents to actively perform their functions as mother and father for the needs of the child;

. . . .

(8) Which parent is more likely to allow the child frequent and meaningful contact with the other parent.

In support of this point, Wife argues that the evidence demonstrated that there was a bonding between her and the child. The main thrust of Wife's contention of error, however, relates to the allegations of sexual abuse made against Husband during the trial.

On the third day of trial, Wife's attorney informed the court of an allegation that Husband had sexually abused the child the preceding weekend. According to the evidence, the first indication of potential abuse occurred when Husband returned the child to Wife's grandmother the night before trial commenced after having exercised visitation privileges. According to the grandmother, with whom the child was staying because of the impending trial, the child usually slept with her but on that occasion insisted on sleeping on the couch. She also testified that the child was acting "wild" the next day (the first day of trial) and that she (the child) later pulled her panties down and began playing with her genitals while they were at the courthouse. That night, when the grandmother was getting the child ready for bed, the child allegedly said, "Daddy saw my jaybird"; "he kissed me down there"; and that she had slept with her daddy.

The grandmother did not tell Wife about these allegations until two days later, at which time a hotline call was made reporting the incident. The case was recessed after the third day of trial, apparently because of the trial court's schedule, was resumed on June 7 and was concluded on June 8. In the intervening time, the child was examined by a doctor with no findings indicative of sexual abuse. An interview of the child was also conducted by a deputy juvenile officer, dur-

ing which she made statements and gestures which could be interpreted as indicative of sexual abuse. Husband, however, denied the allegations that he sexually abused his daughter.

The Division of Family Services also conducted studies of the home environments of both Husband and Wife. While Wife contended that conditions in the house were dangerous for a small child, including a staircase, cabinets without doors, and chicken manure on the back steps, the recommendation was that Husband be given "positive consideration as custodian for his daughter." The caseworker who performed the home study of Wife concluded that "[i]n lieu of a recommendation, I will advise that Ms. Patroske has indicated to this worker that she would like to obtain full custody...." The guardian ad litem appointed to represent the interests of the child actively participated in the trial and recommended that custody be awarded to Husband.

The trial court acknowledged the allegations of sexual abuse, stating that, "from the evidence presented, the Court cannot determine nor find that the allegations are true" and awarded custody of the child to Husband with generous specific visitation privileges to Wife. It did so after having had the opportunity of seeing the witnesses and hearing all the evidence. We do not minimize the seriousness of the allegations of sexual abuse in this or any case and have thoroughly reviewed the record. Resolution of the conflicts in evidence on this subject hinged largely on credibility. The trial court, however, is in a far better position to evaluate the credibility of witnesses than an appellate court and the resolution of conflicting evidence concerning the relative fitness of parents for custody is left to the trial court with deference to be accorded its conclusions. *Sturma v. Sturma*, 674 S.W.2d 626, 627 (Mo. App.E.D.1984).

In the instant case, the trial court was faced with a factual situation in which neither custodial alternative was flawless. The evidence included testimony that Husband had grown and sold marijuana in the past and that both parents had used illegal drugs. There was also evidence, however, that Hus-

band had actively participated in the child's care such as dressing, feeding, and playing with her on occasions when Wife slept until midday apparently because of abuse of medications. He had also been responsive to calls from the child's day-care center when the attention of a parent was needed.

There was evidence from which the trial court could have found that Wife had been diagnosed as having major depression and a borderline personality disorder; that as a result of her abuse of medications she had, in the past, slept when she should have been caring for the child, her ability to concentrate and carry on conversations was impaired, and she would become easily agitated; and that she had used not only marijuana but also cocaine and "speed" on occasions.

Wife, however, argues that the allegations of sexual abuse were sufficient evidence to exclude Husband as a potential custodian of the child. She cites *D.L.M. v. L.E.M.*, 788 S.W.2d 753 (Mo.App.E.D.1990), for the proposition that where there was physical manifestation of signs consistent with sexual abuse, custody should not be awarded to a "suspected" sexual abuser but should be awarded to the non-offending party even though that party's conduct and lifestyle may not be stellar. She argues that in the instant case the child's actions, together with her statements, provided a strong basis for suspicion of sexual abuse which, itself, would require the award of custody to the her. *D.L.M. v. L.E.M.*, however, was not a mandate requiring the award of custody to the other parent any time there is an allegation or suspicion of sexual abuse. In that case, the appellate court merely held that it was unable to find an abuse of discretion in the award of the custody to the mother under the circumstances existing there. *Id.* at 755.

The trial judge has broad discretion in deciding what is in the best interests of a child and great deference is granted to the lower court's determination when custody of a minor child is involved. *Riley v. Riley*, 643 S.W.2d 298, 301 (Mo.App.W.D.1982). In reviewing an award of custody, the appellate court presumes all evidence was considered by the trial court and custody was decreed consistent with the best interests of the child.

*Id.* at 301. *See also In Interest of J.L.H.,* 647 S.W.2d 852, 856 (Mo.App.W.D.1983). An appellate court may not substitute its judgment for that of the trial court so long as there is credible evidence upon which the trial court can formulate its beliefs. *Riley v. Riley,* 643 S.W.2d at 301–302.

The record in the instant case does not require the conclusion that the trial court's ruling concerning custody was against the logic of the circumstances then before it and so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration, the benchmark of an abuse of discretion. *See In re Marriage of V_A_E_,* 873 S.W.2d at 268. This point is denied.

### POINT IV

█ In her fourth and final point, Wife contends that the trial court erred in not continuing the commencement of trial to permit the guardian ad litem to investigate the fitness of the parties to have custody of the child. She also argues that the failure to grant a continuance when the allegations of sexual abuse were first made during the trial limited the effectiveness of the investigation of such allegations by the guardian ad litem and the Division of Family Services.

The parties made a joint application for a continuance and for appointment of a guardian ad litem five days before trial. At that time, a guardian ad litem was appointed but the application for continuance was denied. The request for continuance was orally renewed by Wife's attorney on the morning the trial commenced on the theory that the guardian ad litem had not had sufficient time to prepare. The guardian himself, however, did not join in the request for a continuance and the trial court denied that relief.

Section 452.423.2 provides, in pertinent part:

2. The guardian ad litem shall:

(1) Be the legal representative of the child at the hearing, and may examine, cross-examine, subpoena witnesses and offer testimony;

(2) Prior to the hearing, conduct all necessary interviews with persons having contact with or knowledge of the child in order to ascertain the child's wishes, feelings, attachments and attitudes. If appropriate, the child should be interviewed;

As pointed out by Wife, cases such as *In Interest of J.L.H.,* 647 S.W.2d 852, stand for the proposition that it is imperative that a guardian ad litem investigate and have input on the issue of the child's best interests, a role which involves more than perfunctory and shadowy duties, but requires the guardian ad litem to stand in the shoes of the child. *Id.* at 861. In the instant case, Wife argues that the guardian ad litem was not able to effectively contribute anything at the trial, and that after the allegations of sexual abuse were made there was a delay of over two months before the trial resumed, during which time "the evidence became stale." She also contends that "[h]ad the guardian ad litem been able to conduct his investigation prior to the hearing of evidence, there is no doubt his ability to represent [the minor] would have been increased and the issue of sexual abuse would have been discovered and investigated in a far more timely and coherent way than it was at trial." These arguments, however, are not supported by the record. Additionally, there is no showing of any other evidence which would have been available concerning the sexual abuse allegations if commencement of the trial had been delayed or if the case had been continued as soon as the allegations surfaced rather than being recessed at the end of that day. During that recess, the allegations were investigated by the authorities, the guardian ad litem had the opportunity to do the same, and the matter was the subject of extensive testimony when the trial resumed.

█ From our review of the record, it is apparent that the guardian ad litem participated extensively at the trial, not only by presenting medical records but also by cross-examining witnesses on issues which went directly to the best interests of this child. He was also forthright and candid with the court in making recommendations concerning the child's best interests. While these opinions and recommendations were not binding on the court, they were in keeping with the

function of the guardian ad litem as an agent of the court to assist in providing requisite information bearing on the best interests of the child untainted by the parochial interests of the parents. *State ex rel. Bird v. Weinstock,* 864 S.W.2d 376, 385 (Mo.App.E.D. 1993).

The granting of a continuance is a discretionary matter which should not be disturbed in the absence of a denial which is arbitrary and capricious. *Nance v. Nance,* 880 S.W.2d 341, 344 (Mo.App.E.D.1994); *Wright v. Price,* 871 S.W.2d 12, 14 (Mo.App. W.D.1993). In the instant case, we hold that the trial court did not abuse its discretion in denying the continuance or in failing to recess the trial as soon as the sexual abuse allegations were made rather than at the end of that day of trial.

This case is remanded to the trial court for entry of an amended judgment in accordance with our ruling in Point II. In all other respects the judgment is affirmed.

PREWITT and PARRISH, JJ., concur.