**Kenneth M. KLAUS, Petitioner/Appellant,**

v.

**Janice L. KLAUS,
Respondent/Respondent.**

No. 67001.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 2, 1996.

Michael C. Walther, Clayton, Rochelle Ann Kaskowitz, St. Louis, for appellant.

Arthur Friedman, Amy W. Boltzman, St. Louis, for respondent.

CRAHAN, Presiding Judge.

Husband appeals from the division of property and the award of maintenance to Wife in the decree dissolving their marriage. We affirm.

Husband and Wife were married in September, 1965 and separated in September, 1990. Two children, Matthew and Katura Klaus, were born of the marriage. Husband was employed by Marlo Graphics Inc., (hereinafter "Company"), a printing company owned by the Klaus family. Wife had worked for Company in the past but was not employed outside the home at the time of dissolution. Company was founded by Husband's father, Martin Klaus, in 1948. Husband's father ran the business until 1982, when Husband took over as president. Prior to his death in 1983, Martin Klaus gave his stock in Company to Husband, Wife, Matthew and Katura. At the time the petition was filed, Husband held 36.1% of the stock, Wife held 22.5%, and each of the children held 20.7%.

According to Husband, Company ran into financial difficulty in 1986. Husband's expert testified that Company's stock had become worthless by 1987. It is undisputed that at this time Company procured a line of credit using the personal assets of Husband and Wife as collateral. Husband cites this as evidence of Company's desperate financial status. Wife contends the personal guarantees were routine and that Company did not become aware of its financial troubles until after certain accounting reports were finalized in 1988, seven months after the line of credit had been established. In order to improve Company's cash flow, Wife left Company's employ and Husband's annual pay was reduced from $107,000 to $85,000. Wife's expert testified that the company did have a negative net worth, but that this did not mean that the stock was worthless.

In 1988, outside consultants were employed to manage Company. Husband discontinued his management activities and instead focused on sales. Subsequently, Company returned to profitability. Husband attributes this to the investment of his labor, the sacrifice of his income and the line of credit secured by personal, marital assets. Wife contends it was due to the replacement of Husband by outside management.

During the dissolution proceedings, Husband argued that the Company stock given to him and Wife by Husband's father had been transmuted from separate to marital property. There is no dispute that the stock was originally separate property. Husband argued that as the stock had become worthless as of 1987 and had only regained its present value through the use of marital assets and his labor, it should now be considered part of the marital estate. The trial court found that the stock remained separate property.

On appeal Husband contends that the court abused its discretion and erroneously applied the law when it classified the Company stock as separate property. We will affirm the judgment unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or errone-

ously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

■ Husband argues that because marital funds and labor were used to increase equity in the separately held Company stock, the marital estate should be compensated for these contributions. Marital assets which are used to increase the value of non-marital assets, and are thereby co-mingled with non-marital assets, may be recovered to the extent of the contribution made. § 452.330.2 RSMo 1988; *Drikow v. Drikow*, 803 S.W.2d 122, 125 (Mo.App.1990). Husband reasons that as the stock became worthless in 1987, the entire value of the stock at the time of dissolution was attributable to the contributions made by marital labor and the use of marital assets. He therefore concludes that all of the Company stock owned by Husband and Wife should have been classified as marital property and divided accordingly.

■ Entitlement to a share of the increased value of non-marital property due to marital effort requires proof of (a) a contribution of substantial services; (b) a direct correlation between those services and the amount of increase in value; (c) the amount of the increase in value; (d) performance of the services during the marriage; and (e) the value of the services, the lack of compensation, or inadequate compensation. *Meservey v. Meservey*, 841 S.W.2d 240, 246 (Mo.App. 1992). The trial court has considerable discretion in determining whether, as a result of marital services or labor, non-marital property has increased in value and whether this increase should be determined to be marital property. *In re Marriage of Patroske*, 888 S.W.2d 374, 378 (Mo.App.1994). As a result, we will not disturb the trial court's decision on such matters without a clear showing of abuse of discretion. *Id.*

The trial court found that no share of the Company stock was transmuted into marital property. There is substantial evidence supporting this decision. Husband first claims that marital labor, namely his efforts as a salesman and manager, contributed to the recovery of Company. Wife presented evidence that the rebound of Company profits was due to factors other than the efforts of Husband. In 1988, Company hired outside consultants to manage the company. Company then enjoyed three years of profits in excess of $200,000 a year. In 1991, Husband resumed control of the management of Company. For the next three years, Company either earned less than $12,000 or lost money. Accordingly, it was within the trial court's discretion to conclude that Husband's labor was not directly related to the increase in value of Company's stock.

There was also substantial evidence that Husband was adequately compensated for his services by his $85,000.00 salary. While this figure does represent a significant decrease from Husband's prior earnings of $107,000.00, nothing in the record suggests that this was less than adequate compensation. Moreover, at the same time Husband's compensation was reduced, Wife gave up her employment with the company altogether, thus eliminating her compensation.

Husband next contends the use of marital property as collateral for loans crucial to the survival of Company transmuted Company stock from separate to marital property. This argument is squarely refuted by *Signaigo v. Signaigo*, 718 S.W.2d 647 (Mo.App. 1986). In *Signaigo*, this court held that the use of one spouse's separate property and marital property to secure financing for the other's separately held corporation did not render the corporate stock marital property. *Id.* at 648. The court noted that no marital funds were invested in the corporation and that only corporate funds were used to pay off the debt. *Id.*

Husband argues *Signaigo* is dissimilar as the corporation involved was not as financially troubled as Company and because there was no evidence that the loans in *Signaigo* facilitated a corporate recovery. The fact that *Signaigo* did not find the secured loans to be crucial to the restoration of a corporation with "worthless" stock is inapposite. The claim for non-marital property was rejected because marital funds had been used solely as security and were not expended to repay any loan owed by the separately held corporation. The same factors are present in the instant case and warrant the same result.

Husband's attempt to distinguish the above case law by contending that the marital contributions in the instant case were the essential elements in Company's recovery is misplaced for purposes of our review. There was substantial and credible evidence presented upon which the trial court could have found Company's recovery was due to factors other than Husband's labor and the use of marital assets as security.

 Furthermore, there was no evidence presented that either Husband or Wife intended that their individually held Company stock should not remain separate property. Non-marital property may lose its character as such if there is evidence of an intent to contribute the property to the community. *Cuda v. Cuda,* 906 S.W.2d 757, 759 (Mo.App. 1995). In this case, however, the record establishes that Husband and Wife continuously treated Company stock as separate property. Husband and Wife each voted their shares of stock separately and held their shares under their individual names. It appears that any "intent" on Husband's part that the stock be considered marital property first arose during the dissolution proceeding, when it became apparent that a finding that the stock was marital might prove useful in Husband's efforts to obtain a controlling share. We find no error in the trial court's determination that the shares remained separate property. Point denied.

Husband next contends the trial court erred in awarding Wife maintenance. We have reviewed the briefs of the parties and the record on appeal and find this point to be without merit. Although reasonable minds could differ with respect to the amount of the maintenance award, the award is within the range supported by the evidence and does not constitute an abuse of discretion. The trial court did not allow Wife the full amount of her claimed expenses and the amount allowed is supported by substantial evidence. Contrary to Husband's contentions, Wife was not required to deplete her share of marital property to reduce debt incurred during the marriage, nor was the trial court required to accept husband's speculation as to Wife's ability to join with children to increase her investment or employment income from the parties' closely held business. *Jung v. Jung,* 886 S.W.2d 737, 740 (Mo.App.1994); *Summerville v. Summerville,* 869 S.W.2d 79, 84 (Mo.App.1993). A detailed recitation of the relevant facts and principles of law would have no precedential value. We affirm the maintenance award pursuant to Rule 84.16(b).

For the foregoing reasons the judgment of the trial court is affirmed.

CRANDALL and DOWD, JJ., concur.